Shutt *vs.* Shutt.

*Decree affirmed.*

(Decided 12th June, 1889.)

MARTHA A. SHUTT *vs.* AUGUSTUS L. SHUTT.

*Divorce a Mensa et Thoro—Cruelty of Treatment—Drunkenness—Excessively Vicious conduct.*

Outbreaks of passion and violence on the part of the wife, when under the influence of drink, and beyond self-control, do not constitute such cruelty of treatment of the husband, according to the requirements of law, as will justify a divorce *a mensa et thoro* on that ground.

Drunkenness on the part of the wife, accompanied with gross and revolting language, and occasioning family broils, does not *per se* constitute such "excessively vicious conduct" as will justify a divorce *a mensa et thoro* under section 26 of Article 16 of the Code.

Shutt *vs.* Shutt.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the Court below, (WRIGHT, J.,) granting a divorce *a mensa et thoro* to the complainant, Augustus L. Shutt, from the defendant, Martha A. Shutt, and from the order refusing her permanent alimony.   The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Edgar H. Gans,* and *Bradley T. Johnson,* for the appellant.

· *Frank X. Ward,* and *William A. Fisher,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed by a husband against his wife for a divorce.   The prayer of the bill is for a decree *a vinculo matrimonii,* but there is no ground shown for any such decree, and the Court below only decreed a divorce *a mensa et thoro,* which the wife resists, and the husband seeks to maintain.

The bill charges cruelty of treatment and habitual drunkenness by the wife, as the grounds for divorce; and while some of the allegations of the bill are over-stated, and others given undue color, the proof shows a case of matrimonial infelicity that is truly deplorable.   The case is an unfortunate one both for the husband and the wife.

The parties have been married since 1866, but have had no children.   They have lived in respectable society, and until the unfortunate habit was contracted by the wife of over-indulgence in the stimulants of intoxicating drink, they appear to have lived in entire harmony, and in a state of happiness as husband and wife.

Shutt *vs.* Shutt.

It appears that the wife had been for some years sorely afflicted with what the physician terms bronchial asthma, intermittent attacks of coughing, palpitations of the heart and difficulty of breathing; and to such an extent was she so afflicted, that she would have fainting spells which at times threatened the termination of her life. It was while she was so afflicted, and as means of relief, that she resorted to the use of brandy and gin, and perhaps other alcoholic stimulants. It is shown that the habit in the use of these stimulants grew upon her gradually, and from moderate use in the beginning it became immoderate, and finally ran into distressing excesses. This habit was acquired with the knowledge, and under the immediate observation of the husband; and while the proof shows that he was kind and indulgent to his wife, it is not shown that he ever attempted to arrest or break up this unfortunate habit, by the resort to any means of cure and reformation, or even of temporary restraint.

We shall not attempt any recital of the details of the evidence. Such recital could serve no useful purpose, in the view we have of this case. Suffice it to say, that the charge of cruelty of treatment by the wife, in the sense of bodily harm or serious danger to health of the husband, is not supported in proof, as the law requires, to make it the ground for a decree of separation. The only personal violence offered to the husband, as shown by the proof, occurred on some two or three occasions, when he had interposed between the wife and his mother; the latter living in the house of her son, and as between whom and the wife there seems to have been difficulties and frequent boisterous altercations; and which, upon two or three occasions, resulted in personal violence to the mother-in-law. These outbreaks of passion and violence, as shown by the proof, never occurred except when the wife was under the influence of drink, and was without self-control. All this, though disgusting and repre-

hensible to the greatest degree, does not establish the fact of such cruelty of treatment of the husband, according to the requirements of law, as will justify a decree of divorce on that ground.   Indeed, we do not understand it to be seriously contended, that, as an independent ground, cruelty of treatment is sufficiently shown to justify a decree.

The ground principally relied on, in support of the decree below, is the habit of intoxication, and its attendant consequences, to which we have referred, as constituting a case of *excessively vicious conduct* by the wife, within the meaning of the statute.   The terms, "excessively vicious conduct," are very indefinite; and of the multitude of vices to which humanity is subject, the Legislature has given no intimation as to the class or character of vices to which the statute was intended to apply.   It would, however, be difficult to suppose that it was intended to apply to all the multiform vices to which mankind is liable, though indulged in to an excessive degree.   The terms, "excessively vicious conduct," were originally employed in the Act of 1841, ch. 262, which was the Act that first conferred jurisdiction on the Court of Chancery to grant divorces in this State; and from that time to the present, in the multitude of applications for divorces for various causes, we are not aware that it has ever been held, or even suggested, that the habit of drunkenness, of either man or woman, was sufficient ground *per se* for a divorce.   It may, no doubt, in connection with other grave offences against the marriage relation, be considered as an element in the habit and conduct of the party complained of; but, as an independent ground, drunkenness has never been considered, either in this State or in England, as furnishing cause to justify a divorce.   It is true, in some of the States of this Union there are statutes that make habitual or continual drunkenness a cause for divorce; and we must suppose

Shutt *vs.* Shutt.

that if it had been the intention of the Legislature of this State to make drunkenness a cause of divorce, it would have been so expressly declared, and not left to doubtful construction or implication. If the terms of the statute were construed to embrace such a cause of divorce, it would, of course, have mutual application; that is, it would furnish ground for divorce upon the complaint of the wife against the husband equally as upon the complaint of the husband against the wife; and so it would apply to all grades and conditions of society. And if the statute were so construed, and the Courts opened to applications founded upon that cause, it would not be difficult to foresee that applications for divorces would immensely increase, with all their attendant evil consequences, and that facility would be furnished for obtaining divorces that has not hitherto been supposed to exist. In this State it has been repeatedly declared, that the marriage relation is not to be disturbed for any but the gravest reasons, and only upon such state of facts as show to the entire satisfaction of the Court that it is impossible that the duties of the married life can be discharged. Public policy and morality alike condemn these judicial separations of husband and wife, except where it cannot be avoided; for, as it has been justly said, such separations throw the parties back upon society in the dangerous character of a wife without a husband and a husband without a wife. The Court, therefore, is always very reluctant in any case, and it should be specially so in a case like the present, to interpose to separate the parties, where it can perceive that the evil complained of may possibly be corrected by the exertion of proper influence, or such reasonable authority as the nature of the case may justify. And this is a principle upon which Courts of the highest authority have proceeded.

In the case of *Scott vs. Scott,* 29 *L. J. Rep.*, (*N. S.,*) 64, the facts were quite analogous to the facts of this

case, though somewhat stronger in support of the application of the husband.    There the husband petitioned for separation from his wife on the ground of her habits of drunkenness and consequent bad conduct.    It appeared that the wife, when under the influence of drink, was sometimes violent and impatient of restraint, or attempted restraint, of her husband; and the habit continued for many years, until finally the husband left the house, taking his daughter with him, in consequence of the conduct of the wife.    On the case thus presented, the Court, treating the wife's drunkenness as the direct and primary cause of her acts of violence, dismissed the petition.    The learned Judge said: "Having carefully considered the evidence I think I must dismiss the petition.    No doubt the respondent is a drunken, profligate woman, likely to make her husband's house very miserable.    But I cannot avoid seeing that the real ground of the application is that the husband wishes to get rid of a drunken wife, and I must be cautious about opening the Court to cases of that description.    The wife may have an unruly propensity in her drunken fits to destroy property, but there is no evidence of such *saevitia* as would justify me in decreeing judicial separation."

And so in the case of *Brown vs. Brown, L. R.*, 1 *Pro. & Div.*, 46.    In that case the application was by the wife against the husband for a decree of separation, upon the ground of habitual drunkenness of the husband; and it was held, by Lord PENZANCE, that habitual drunkenness, and a series of annoyances, and extraordinary conduct on the part of the husband, did not constitute legal cruelty, to justify judicial separation.    His lordship, in the course of his opinion, said: "The Court is not permitted to indulge its feelings, at the expense of unsettling the law, or break with the decided cases, to sympathize with the petitioner's misfortunes.    A decree that should establish habitual drunkenness to be

of itself ground for judicial separation, would be likely to have a wide application."

The same principle was acted on in the case of *Mason vs. Mason,* 1 *Edward's Ch. Rep.,* 284, in which the opinion of the Vice-Chancellor was affirmed by the Chancellor. In that case the application was by the wife against the husband, for a divorce *a mensa et thoro,* upon the ground of habitual intoxication; and the Court denied the application and in its opinion said: "Frequent intoxication constitutes the principal, if not the only source, from whence has proceeded the misconduct of which the wife complains. I cannot admit this propensity or the occasional or even frequent indulgence of it, to be of itself a sufficient ground for a bill of this sort. The Court is not to add to the deplorable consequences of intemperance by making it, however excessive, the sole cause of severing the conjugal tie."

The evidence in this case exhibits a domestic state well calculated to excite sympathy for the husband. The broils in his family, made by the wife with his mother; the gross and revolting language of the wife upon these occasions, and the very reprehensible methods resorted to by the wife to procure liquor to gratify her thirst, were all facts well calculated to produce disgust and extreme mortification in a husband possessed of any degree of refinement. But all this conduct was that of an unfortunate woman who had become addicted to the habit of occasional intoxication, and the proof shows that it was only when she was under the influence of strong drink that she was guilty of the gross improprieties referred to in the evidence. And however deplorable this state of things may be, it is quite certain that the Courts cannot interfere to furnish relief against all the troubles and distresses that may exist in the matrimonial relation. By far the greater number of these must be left to the good sense and judicious manage-

ment of the parties themselves. The husband must exert his influence and authority over the wife for the correction of her bad habits. As has been said by a great authority, (Lord STOWELL,) it is the law of religion, and the law of the country, that the husband is entrusted with authority over his wife. He is to practice tenderness and affection, and obedience is her duty. Within and by a proper observance of this principle it may be hoped that the husband will be able effectually to restrain the unfortunate habit in his wife of which he complains, and to restore the happy relation between the wife and himself that formerly existed.

It results from what we have said, that the decree of the Court below must be reversed, and the bill be dismissed with costs.

*Decree reversed, and*
*bill dismissed.*

(Decided 12th June, 1889.)