# CHARLES R. McKANE *v.* SARAH CATHERINE McKANE.

*Divorce—Excessively Vicious Conduct—Cruelty.*

That a husband occasionally cursed his wife, and used vile and defamatory epithets towards her, did not constitute excessively vicious conduct, within Code, art. 16, sec. 39. pp. 516-519

That a husband occasionally cursed his wife, and used vile and derogatory epithets towards her, without endangering her personal security or health, did not constitute legal cruelty.

pp. 516-519

That the wife required the husband to occupy another bedroom, and refused to admit him to her bedroom, did not constitute desertion on her part, if her action in this regard was the result of his serious misconduct.                    pp. 519, 520

*Decided March 4th, 1927.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN, J.).

Bill by Sarah Catherine McKane against Charles R. McKane. From a decree dismissing defendant's cross-bill and granting plaintiff relief as prayed by her, defendant appeals. Reversed in part and affirmed in part.

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Oswald & Oswald,* for the appellant.

*John E. Wagaman* and *Harper Ballentine,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a suit for limited divorce by Sarah Catherine McKane, appellee, against her husband Charles R. McKane, the appellant, in which a cross bill was filed by him asking for the same relief. In the bill the ground alleged is exces-

sively vicious conduct and abandonment and desertion, and in the cross bill the charges are the same and, in addition, cruelty.

In the answers filed each party denies the allegations of the other.

The learned chancellor dismissed the cross bill and granted the original plaintiff the relief prayed in her bill, and fixed the alimony at seventy dollars a month. This appeal is from that decree.

The parties have been married about twenty-five years. At the time of the marriage Mrs. McKane had an infant son, of whom defendant was not the father, but who lived with them after the marriage. At the time of the separation a niece of plaintiff, Marjory Brown, about thirteen years old, was also staying with them.

The defendant for about thirty-three years has been a freight conductor of the Western Maryland Railroad Company. At the time of the trial he was earning from two hundred to two hundred and eighty dollars a month. His pay checks, or the proceeds thereof, were regularly turned over to his wife for family expenses, he keeping for himself only six dollars a week to pay his board while on the road. His work required him to be away from home from Monday morning till Saturday evening. The house in which the family lived was paid for, half by defendant and half by plaintiff's son, and title was taken in the name of the son, it being understood that it would be a home for them all.

There is no evidence of abandonment by defendant, and the chancellor so found.

The wife's charge is that the husband had "spells" about once a month, while at home from Saturday evening till Monday morning, caused by drinking, and that on these occasions he called her vile names, implying lack of chastity on her part; cursed her, pouted, and refused to eat the food she prepared for him; that the trouble began almost immediately after their marriage and continued, especially during the last fifteen years, with seldom more than a month's

intermission; that after these quarrels he would frequently move his clothes and stay away for several weeks; she said: "It simply gave me a nervous breakdown, with the continual cursing me, not eating and leaving home. I had the doctor; every month or so I had to have the doctor on account of my nerves; it simply worked on until my nerves gave way."

There is some corroboration of plaintiff's testimony as to cursing and the use of vile and defamatory epithets, once shortly after the marriage, another time about fifteen years ago, and again at the time of the separation in May, 1926; also as to his leaving home several times; also as to defendant's drinking at least on two occasions. He admits that he took a drink occasionally when he came home tired, but denies that he ever drank to excess. There is none as to his refusal to eat. And there was no testimony, except that of plaintiff, to indicate that these outbreaks were of monthly occurrence. But even if they were, that does not constitute excessively vicious conduct within the meaning of the statute, nor cruelty of treatment in the legal sense.

In *Harding v. Harding,* 22 Md. 337, the husband during the period of confinement of his wife charged her with adultery and, while she was unable to leave her bed, told her he would not permit her to remain in his home, that she must leave as soon as her confinement was over. "This conduct," the Court said, "was accompanied with allegations of the gravest and most serious character, impeaching the virtue and chastity of the appellant, and charging that her child was not his, but the offspring of another man." This Court found that there was no evidence to justify this suspicion. But it concurred in the opinion of the trial court that the charge of cruelty made by the bill was not supported by the evidence, citing *Daiger v. Daiger,* 2 Md. Ch. 335, and *Coles v. Coles,* 2 Md. Ch. 341, in which Chancellor Johnson, adopting the principles established in the English ecclesiastical courts, and quoting the language of Chancellor Kent in *Barrere v. Barrere,* 4 Johns. Ch. (N. Y.) 187, laid down the rule that "mere petulance and rudeness, and sallies of

passion, may not be sufficient." "There must be a series of acts of violence, or danger of life, limb or health to justify the Court in separating the parties."

And in *Shutt v. Shutt,* 71 Md. 193, where gross and revolting language caused by intoxication was relied on as constituting a case of excessively vicious conduct, Judge Alvey said: "But all this conduct was that of an unfortunate woman who had become addicted to the habit of occasional intoxication, and the proof shows that it was only when she was under the influence of strong drink that she was guilty of the gross improprieties referred to in the evidence. And however deplorable this state of things may be, it is quite certain that the courts cannot interfere to furnish relief against all the troubles and distresses that may exist in the matrimonial relation." And the bill was dismissed.

The latest expression of this Court was in *Short v. Short,* 151 Md. 444. There we said, through Judge Parke: "Legal cruelty must be such conduct on the part of the husband as will endanger the life, person or health of the wife, or will cause reasonable apprehension of bodily suffering. It should be of such a nature as to render cohabitation physically un safe to a degree justifying a refusal to continue it. Marital neglect, indifference, * * * sallies of passion, harshness, rudeness, and the use of profane and abusive language towards her are not sufficient, if not in manner and degree endangering her personal security or health. *Childs v. Childs,* 49 Md. 514; *Hawkins v. Hawkins,* 65 Md. 108; *Bounds v. Bounds,* 135 Md. 220." See also *Wheeler v. Wheeler,* 101 Md. 427; *Ortel v. Ortel,* 145 Md. 177.

In most of the cases above cited the charge was cruelty of conduct. But in *Shutt v. Shutt, supra,* the Court dealt with the charge of excessively vicious conduct based on drunkenness and its attendant consequences, and it was in discussing this charge that this Court said, through Chief Judge Alvey: "In this state it has been repeatedly declared that the mar riage relation is not to be disturbed for any but the gravest reasons, and only upon such state of facts as show to the en-

tire satisfaction of the court that it is impossible that the duties of the married life can be discharged."

The effect of the gross and abusive language must necessarily depend upon the degree of sensitiveness and refinement of nature of the person to whom it is addressed.    19 *C. J.,* p. 44, notes 89 and 90.    It does not appear from the testimony that the language complained of by plaintiff was used by the husband in public, or in circumstances that warrant us in finding, on the facts of this case, that they were in fact humiliating to a degree justifying a divorce.    It is quite apparent from plaintiff's testimony and her fluent repetition of vulgar expressions that her refinement is not of the most delicate sort, although there is nothing in the testimony to indicate any lack of chastity on her part since her marriage, or to warrant the abusive epithets alleged to have been applied to her by defendant.

But her testimony that her health was affected by his conduct is entirely without corroboration.    There is evidence that about nine years ago, when her son was drafted, she broke down and was in Spring Grove Hospital for several months, and defendant testified she was sick for three years. But there is no testimony of a physician (although plaintiff says she was treated by doctors frequently) or any one, except plaintiff, that her condition was due to ill treatment by defendant.

Nor is there any evidence of physical violence on his part. The one instance of anything approaching that, testified to by plaintiff, was the twisting of her arm; but in this he seems to have been protecting himself from an assault by her upon him.    She certainly had no fear of him and did not hesitate to slap him in the mouth when he used language to which she objected, or to order him out of her room.    She admits that for some weeks before the separation he was occupying another room by her order to "take that back room and you can have that from now on and I will take the other part of the house; don't you bother me and never put yourself in my room; if you do I will drop hot lead in your

ears." She also admits that the only times when he treated her unkindly was when he was drinking. There is nothing in the testimony to indicate viciousness towards her on his part except when under the influence of drink, and then only in words. There is much to indicate that he is fond of his wife, and that his alleged misconduct grew out of jealousy, for which, however, there does not appear to have been any reason except an inflamed brain. Defendant denies in general that he used these abusive epithets, but does not deny that he might have done so on the one occasion twenty-five years ago testified to by Mrs. Spigler, but says he has no recollection of that quarrel.

We think the learned chancellor was in error in granting plaintiff a divorce and allowing her separate maintenance, and that part of the decree will be reversed. The part of the decree dismissing the defendant's cross bill will be affirmed, as the chancellor found as a fact there was serious misconduct on the part of the defendant.

It was held in *Childs v. Childs, supra,* that where a husband by his misconduct induces such behavior on the part of the wife as would be just cause of complaint, but for his own misconduct, and, without first seeking a remedy in the reform of his own conduct, separates from his wife, and after the separation is forbidden by her to return again to her, such act of the wife forbidding the husband to return will not entitle him to a divorce on the ground of abandonment.

We entirely agree with the statement in appellant's brief that there are no insurmountable reasons why the parties should not live together as man and wife. Defendant says he does not now, and never did, charge his wife with infidelity, and that he wants to go home and live with her.

> *Decree reversed in so far as it grants a divorce a mensa et thoro to the plaintiff, with an allowance of alimony, and affirmed in so far as it dismisses defendant's cross bill, costs to be paid by appellant.*