ETHAN B. KLINE *v.* ELIZABETH KLINE

[No. 36, October Term, 1940.]

*Decided December 17th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Edward A. Greenstein* and *Avrum K. Rifman,* for the appellant.

*Paul T. Freund,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court,

Ethan B. Kline, the appellant, applied in the Circuit Court of Baltimore City for a divorce *a vinculo matrimonii* from his wife, Elizabeth Kline, on the ground of voluntary separation for five consecutive years. On a cross-bill alleging desertion, the court granted his wife a divorce and permanent alimony at the rate of six dollars a week. The husband appealed from the decree.

The parties in this case were married on December 24th, 1926. They lived together for more than a year in their home on 37th Street in Baltimore. Both had been married before. In March, 1928, Mrs. Kline left on a trip to La Plata to visit a daughter. There was no quarrel before she left home, but immediately afterward her husband shipped her trunk of clothing to her, and wrote her that he was closing the house and going to live with his

son, but would help her until she found a job. Mrs. Kline hurried back to Baltimore, and pleaded with him to continue marital relations. But he positively refused. He admitted in the court below: "She came in and threw her arms around me, and begged me for another chance, and I told her it was impossible, that I could not go on living with her."

The appellant, seeking to justify his desertion, raised two charges against his wife. He first charge was that she had infected him with a venereal disease in 1927. It has been established that if a spouse, although knowing he or she is afflicted with a venereal disease, yet continues to maintain sexual relations and communicates the disease to the other spouse, such action constitutes extreme cruelty. Mrs. Kline testified that her physician had never given her such a diagnosis, that her husband said her ailment had been diagnosed as "only a little womb trouble," and it was some days later before he accused her of giving him a venereal disease, that he did not consult a doctor, and that the subject was never mentioned subsequently. In order to establish cruelty as the result of communication of a venereal disease, the diseased spouse must have known of the condition in order to impart the element of wilfulness to the act. Sufficiency of evidence of a venereal disease, whether offered to raise a presumption of adultery or to show communication of the disease to the other spouse, is a question of fact which can be determined only from the circumstances of the case. *McMahen v. McMahen,* 186 Pa. 485, 40 A. 795; *Holmes v. Holmes,* 186 Iowa 336, 170 N. W. 793; 17 *Am. Jur., Divorce and Separation,* secs. 78, 402. The record before us does not contain any medical testimony or any corroboration to show that either the appellant or his wife was afflicted with a venereal disease thirteen years ago or at any other time. The unsupported averment is insufficient to establish a charge of adultery or cruelty.

The appellant's second charge was that his wife had contemplated a trip to New York with a man named

14

Harry Morgan in February, 1928. Mrs. Kline swore that she had never known a man by that name, while her husband testified: "I never met him. I only know the name from what she told me." Even if it were true that she went to the railroad station, as the appellant avers, the fact remains that she did not leave Baltimore. It was shown that she had bought some expensive clothing in February, 1928, costing a total of $56.45, less a credit of $2.38, leaving a balance of $54.07; and it was argued that her purchases were evidence of intention to make the trip to New York. The appellant's daughter-in-law quoted Mrs. Kline as saying that she was sorry she had been untrue, but Mrs. Kline denied that she had ever made that statement, and further avowed that she had never been untrue to her husband. It is well established in Maryland that the burden of proof in an action for divorce is on the complainant as accuser, and the evidence necessary to entitle the complainant to a decree on the ground of adultery must be sufficient to lead to such a finding not only by fair inference but as a necessary conclusion. In considering circumstantial evidence, the court should exercise care and circumspection and should never hold that adultery had been committed unless the offense, and not merely a suspicion thereof, is clearly shown. The evidence must be sufficiently strong and unequivocal to carry conviction of the truth of the charge and if it does nothing more than raise a suspicion of unchastity it is insufficient to warrant a decree. *Renner v. Renner,* 177 Md. 689, 12 A. 2nd 195, 197. Obviously, the store bill is insufficient to prove infidelity or abandonment.

It is generally accepted that even though one spouse has separated from the other without cause, if he or she seeks a reconciliation in good faith and offers to return, and the other spouse refuses the overtures, the former is not deemed guilty of desertion thereafter. After offers of reconciliation have been made in good faith by one spouse, though offending in the first instance, a refusal by the other spouse to resume cohabitation may consti-

tute desertion on the latter's part. The spouse offending in the first instance must in good faith exercise all reasonable efforts to right his or her wrong, and the other spouse is entitled to a reasonable time in which to consider the overtures for reconciliation before a refusal to resume the marital relationship is converted into a desertion by the spouse so refusing. The law will not countenance the living apart of a husband and wife in Maryland except for grave and weighty causes. *Buckner v. Buckner,* 118 Md. 101, 112, 84 A. 156, 160; *Vanderburgh v. Vanderburgh,* 152 Minn. 189, 188 N. W. 276; 17 *Am. Jur., Divorce and Separation,* secs. 112, 113.

Under the divorce statute passed by the Legislature in 1937, the court may decree a divorce *a vinculo matrimonii* on the ground of voluntary separation of husband and wife, without any cohabitation, for five consecutive years prior to the filing of the bill of complaint, and without any reasonable expectation of reconciliation. Acts of 1937, ch. 296, Code 1939, art. 16, sec. 40. But Mrs. Kline testified that she has consistently expressed her desire to continue the marital relationship. As she expressed it, she "begged him a million times" to live with her again. It is manifest that this is not a case of voluntary separation. In order that a separation of husband and wife can be regarded as voluntary within the meaning of the statute, there must be an agreement of the parties to live apart. The word "voluntary" signifies willingness. When used in reference to an act of an individual, it means that he acted of his own free will; when used in reference to a common act of two or more persons affecting their common relationship, it means that they acted in willing concert in the doing of the act. *France v. Safe Deposit & Trust Co.,* 176 Md. 306, 326, 4 A. 2nd 717, 726.

A further contention of the appellant is that his desertion had been condoned by his wife. Mrs. Kline stated that when her husband called to see her in Washington, she begged him again to take her back, and he went with her "as a husband" in that city. But the appellant testified that he never cohabited with her in Washington or

anywhere else subsequent to their separation in 1928. A party should not be allowed to rely on a certain act, when he has denied under oath that he had committed such an act. Moreover, even assuming that there had been cohabitation on one occasion, there is no testimony that cohabitation occured within three years prior to the filing of the bill of complaint.

Finally, the appellant complains that the amount of alimony allowed to Mrs. Kline is out of proportion to his income. The appellant relied on the statutory provision that the court shall not award alimony unless it appears that the wife's income is insufficient to care for her needs. Code, art. 16, sec. 17. Mrs. Kline says she has been earning four or five dollars a week, but on account of arthritis she is able only to do part time work. The appellant has regular employment at a hospital with a salary of about ninety dollars a month. Prior to the institution of these proceedings he had been sending his wife twenty dollars per month by order of a magistrate. It is the opinion of the court that the award of six dollars a week is not excessive in this case.

*Decree affirmed, with costs.*