PAUL B. HOCKMAN *v.* GRACE HOCKMAN

[No. 22, January Term, 1945.]

474

*Decided March 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Joel J. Hockman* for the appellant.

*Jerome A. Loughran* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Grace Hockman, appellant, and Paul B. Hockman, appellee, were married in 1921 and lived together about 23 years. On the evening of June 6, 1944, when Hockman returned to his apartment in Ellicott City from Ilchester, where he was employed as engineer in a paper mill, Mrs. Hockman asked him "to take his clothes and get out." He refused to do so, but later went out to purchase an alarm clock; and when he returned, the apartment door was locked. He did not make any effort to get in, but "went on back down the street." On the following day he came with a constable to get his clothes; and on June 15 entered suit for divorce *a mensa et thoro* on the ground of desertion. His wife filed a cross-bill for divorce *a mensa et thoro* and alimony on the ground of cruelty. She charges that her husband compelled her to submit to sexual intercourse when she was ill, thereby causing her physical injury. On July 31 the chancellor granted the husband a divorce *a mensa et thoro* and dismissed the cross-bill. The wife is appealing from that decree.

It is well settled that where a husband compels his wife to submit to sexual intercourse at times when it causes her serious injury, and there is reasonable apprehension that he will continue to do so, the wife is entitled to a divorce *a mensa et thoro* on the ground of cruelty. *Griest v. Griest*, 154 Md. 696, 140 A. 590; *Gardner v. Gardner*, 104 Tenn. 410, 58 S. W. 342, 78 Am. St. Rep. 924; 1 *Bishop, Marriage, Divorce and Separation*, Sec. 1629. The marital obligation includes not only the wife's duty of submission upon reasonable request of the husband, but also the husband's duty of forbearance upon reasonable request of the wife. *Mayhew v. Mayhew*, 61 Conn. 233, 23 A. 966, 29 Am. St. Rep. 195. The courts recognize that acts committeed by a husband in the exercise of his marital rights, while not ordinarily dangerous or cruel, may be both dangerous and cruel. The Supreme Court of New Hampshire has said: "Humanity demands that such complaints be heard. The wife pro-

tecting her life from the ungoverned lust of her husband by seeking a divorce, presents as strong a case of relief under the law as when she flees from his intolerable cruelty inflicted by brute force. Neither public policy nor morality requires the exclusion of her testimony, if such exclusion would protect him in impairing her health or endangering her life by degrees, whether the result is accomplished by the brutal gratification of his lustful passions, the continued infliction of physical force, or the administering of slow poisons." *Melvin v. Melvin,* 58 N. H. 569, 42 Am. Rep. 605, 607.

It appears from the evidence that Mrs. Hockman has undergone three operations, performed for tubal pregnancy, adhesions of her stomach, and gall bladder trouble, the last in 1942. She became ill again in May, 1944, when she was given treatment for two weeks in the hospital at Sandy Spring. She testified that often, while she was suffering, she "cried and begged him" not to have intercourse with her, as it "kept her stomach swollen," but her protests resulted in altercations. She swore that, while she was still suffering from the gall bladder operation, he threatened to kill her if she refused his demands. According to her testimony, she told him that the incision had not fully healed, and she was afraid that it might turn into cancer, and she "pleaded and cried to him not to, to wait until she healed if he must," but he asserted that "if she was no good to him, she might as well be dead anyway." Appellant's testimony was corroborated by their only child, Eleanor M. Bendler. She testified that she had heard her mother crying in her bedroom on numerous occasions, both before and since the gall bladder operation, and that she could hear the mother protest to the father in their bedroom that she was not well. She declared that she had heard her father curse her mother and tell her to get out and also say that she was "no good to him." She further declared that, after her mother returned from the hospital in 1942, she heard her leave her bed and go downstairs, and "the next day her mother could hardly walk." Corroboration of appel-

lant's testimony was also given by her sister, Mrs. Arbutus Cameron, who swore that her stomach before her last operation was "swollen like a dinner pot," and that she had heard her sister get up at night vomiting and had also heard them arguing in the night. She swore that she heard her sister exclaim: "For God's sake, not tonight!" The chancellor refused to award the divorce to Mrs. Hockman on the theory that her physician did not testify and hence her testimony was not sufficiently corroborated. Under the Maryland evidence statute, no decree of divorce shall be entered upon the testimony of the plaintiff alone, but in every case testimony in corroboration of that of the plaintiff shall be necessary. Code, 1939, Art. 35, Sec. 4. In our judgment appellant's testimony was amply corroborated. The corroboration, required by our statute to support the testimony of the plaintiff in a suit for divorce, need not go to every particular statement found in the plaintiff's testimony; it is sufficient if it gives substantial support to the plaintiff's testimony as to material and controlling facts. *Jacobs v. Jacobs,* 170 Md. 405, 409, 185 A. 109.

We recognize that when testimony is taken in open court, the chancellor has the opportunity to see the witnesses, to hear their testimony from their own lips, and to observe their expression and demeanor, so that, in weighing the testimony and passing upon its credibility, his judgment is informed by the manner and conduct of the witnesses while testifying. The Court of Appeals does not have this advantage, and therefore has no inclination to disturb the chancellor's findings on issues of fact, especially where there is considerable conflict in the testimony. However, there is no presumption of law in favor of the chancellor's findings of fact that must be overcome on appeal; and where his determination is not supported by the clear weight of the proof, this Court will reverse the decree. *Bortner v. Leib,* 146 Md. 530, 546, 126 A. 890; *Jacobs v. Jacobs,* 170 Md. 405, 413, 185 A. 109. In this case the evidence is sufficient to prove that the husband was guilty of "cruelty of treatment,"

one of the statutory causes for which a court of equity may grant a divorce *a mensa et thoro*. Code, Art. 16, Sec. 41. Appellee testified that he had never insisted on intercourse with his wife when she objected, yet he admitted (1) that she had objected "lots of times" throughout their married life, and (2) that he had intercourse with her on the night before she was removed to the hospital in an ambulance in May, 1944. Appellant does not claim that she resorted to physical force to restrain her husband, but she does claim that she protested and resisted as much as she could without resorting to violence. Her husband, who had worked for many years as lumberjack and farmer, but was still under the age of 50, was strong and vigorous; it would have been futile for a woman in her condition to resist his demands by force. The law does not require a wife, who applies for a divorce on the ground of unreasonable sexual demands, to show that she used physical force to resist the advances of her husband for the purpose of proving that she did not comply with his demands willingly. "If such were the case," as the Iowa Supreme Court has said, "the wife's life would be doubly endangered at such times." *Ridley v. Ridley*, Iowa, 100 N. W. 1122.

The law is clear that where a husband's misbehavior has been such as to render continuance of the marriage relation unbearable, or such as is recognized by the law as sufficient to justify his wife in leaving him, he is the spouse who is guilty of desertion. *Pattison v. Pattison*, 132 Md. 362, 103 A. 977; *Antrim v. Antrim*, 169 Md. 418, 181 A. 741; *Serio v. Serio*, 170 Md. 542, 185 A. 548; *Rigsby v. Rigsby*, 82 Ark. 278, 101 S. W. 727. If the husband's cruelty is so extreme that it drives his wife away from him, the law presumes that he intended such effect of his cruelty. *Barnett v. Barnett*, 27 Ind. App. 466, 61 N. E. 737. We consider that it is in the interest of public policy to permit a spouse to set up in defense of his or her separation such misconduct on the part of the other spouse as would render it impossible to continue the matrimonial cohabitation with self-respect,

health and safety. *Polley v. Polley,* 128 Md. 60, 66, 97 A. 526; *Hastings v. Hastings,* 147 Md. 177, 127 A. 743. It was suggested by appellant that her husband "set the stage" for the separation because (1) he continued to pay rent for the apartment where they lived before she went to the hospital, as well as the new apartment, and (2) he was apparently satisfied when he found the apartment door locked. However, it is not necessary for a wife to show that her husband, in committing acts of cruelty, entertained any settled purpose to drive her away; it is sufficient if the separation was the natural consequence of his acts. *Grierson v. Grierson,* 156 Cal. 434, 105 P. 120. Appellant contends that she was impelled to lock the door of the apartment on the evening of June 6, 1944, on account of her husband's unreasonable demands for sexual intercourse without regard for her health, and that her act was the only means she possessed to protect herself from injury. It is observed that she locked the apartment door only two weeks after she returned from the hospital at Sandy Spring. It is our conclusion that she was justified in refusing to live with her husband. It is reasonable to believe that he could have prevented much of the trouble and the final separation by the exercise of self-control, and, it was his duty to do so. *Griest v. Griest,* 154 Md. 696, 140 A. 590, 593. His complaint was that his wife irritated him by frequent arguments. The law of this State is tolerant of nagging, austerity of temper, petulance of manner, rudeness of language, and even sallies of passion, to the extent of not regarding them as of themselves sufficient to justify separation, unless they threaten bodily harm. *Hastings v. Hastings,* 147 Md. 177, 127 A. 743; *McKane v. McKane,* 152 Md. 515, 137 A. 288; *Wald v. Wald,* 161 Md. 493, 159 A. 97; *Hyatt v. Hyatt,* 173 Md. 693, 196 A. 317.

It is also observed that appellee, the titular head of the family, made no effort on June 7 or thereafter to effect a reconciliation. Although regularly employed at a salary of approximately $3,400 a year, he offered no

support to the woman who had lived with him for 23 years. Instead, he acquiesced in her action and entered suit for divorce within nine days. It is our opinion that the chancellor should have awarded the divorce *a mensa et thoro* to the wife. As the husband has been receiving a net salary of more than $65 a week, the chancellor should award his wife permanent alimony in the amount of $18 a week, subject to the further order of the court.

We affirm that portion of the decree which orders Hockman to pay his wife's solicitor a counsel fee of $50, in addition to the initial fee of $25, to compensate him for legal services rendered in the court below.

> *Decree reversed in part and affirmed in part, appellee's bill of complaint dismissed, and cause remanded for the passage of a decree in accordance with this opinion, with costs to appellant.*