MARVIN P. BRADSHAW *v.* BESSIE P. BRADSHAW

[No. 35, October Term, 1947.]

*Decided November 19, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*John Sumner Wood* for the appellant.

*J. B. Gilbert* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Marvin P. Bradshaw, now a resident of the District of Columbia, is appealing here from a decree of the Circuit Court for Montgomery County granting his wife, Bessie P. Bradshaw, of Silver Spring, a divorce a *mensa et thoro* and permanent alimony at the rate of $210 per month.

The parties, who formerly lived in Illinois, were married in Washington in 1935. At that time defendant was earning only $1,260 a year. For two years he took a course in accountancy at Benjamin Franklin University in Washington, attending classes there in the morning, and working in the afternoon and at night. After graduation he obtained the position of treasurer of the Washington Institute of Technology, located at College Park, which paid him a salary of $10,000 for a time during the war. The couple moved to Silver Spring in 1941. In July, 1945, complainant, upon returning from a visit

to her mother in Illinois, noticed a decided change in her husband. He was exceedingly nervous and irritable. For some years he had been suffering from stomach trouble, which required him to live on a strict diet, and his work during the years of the war had been a heavy strain upon him. In the Summer of 1945 he decided to sleep on the cot in the den. He claimed that if he was the first to go to bed, his wife would waken him and he had great difficulty in getting back to sleep. Complainant begged him to come back to their bedroom. She tried to reason with him, but he refused to talk to her. On September 30 he took his clothes and left, declaring that he was going to stay at the Ebbitt Hotel. He has been living in Washington ever since.

Defendant testified that he can now sleep better, and that he has gained in weight. He stated that, after he worked during the day, he needed rest in the evening; but that his wife enjoyed herself during the day, and when she did her housework in the evening, the noise made him more nervous. He also stated that his wife, instead of letting him alone, followed him and nagged him. He also complained because she invited some old friends from Illinois to visit them, and they kept him from his repose. He declared that he wants his freedom and he will never live with his wife again.

In this State the court of equity may decree a divorce *a mensa et thoro* for abandonment and desertion. In all cases where such a divorce is decreed, it may be revoked at any time thereafter by the court upon the joint application of the parties to be discharged from the operation of the decree. Code 1939, art. 16, sec. 41. This Court has often stated that the law of Maryland does not countenance the separation of a husband and wife except for grave and weighty causes. The State has a vital interest in avoiding dissolution of the marital relation except upon the clearest and most convincing proof that it is impossible for the parties to discharge the duties of married life. *Kline v. Kline,* 179 Md. 10, 16 A. 2d 924, 926. No misconduct of the wife will justify

her husband in deserting her unless it is such as makes it impossible for him to continue to live with her without loss of his health or self-respect, or is such as will cause reasonable apprehension of bodily suffering. *Schwartz v. Schwartz,* 158 Md. 80 148 A. 259.

It is the settled law of this State that nagging and even the use of vulgar and abusive language do not amount to such excessively vicious conduct or cruelty of treatment as will justify one spouse in deserting the other. *Porter v. Porter,* 168 Md. 296, 303, 177 A. 464; *Hyatt v. Hyatt,* 173 Md. 693, 196 A. 317; *Miller v. Miller,* 185 Md. 79, 42 A. 2d 915. Even where a husband leaves his wife because of her conduct arising from a vicious and ungovernable temper, but it appears that she had not sought the separation, such conduct does not constitute desertion by the wife entitling the husband to a divorce. *Lynch v. Lynch,* 33 Md. 328. In the instant case the husband's chief complaints against his wife were (1) that she was noisy when she cooked and did other work about the house, (2) that she followed him and nagged him in the hope of persuading him to resume marital relations, and (3) that she entertained some old friends from Illinois when he was nervous and tired. From the record it is evident that defendant's abandonment was largely the result of his disordered nerves, and was not due to any cruelty of treatment, vicious conduct, or any other breach of matrimonial duty of his wife such as would justify him in leaving. Complainant testified that she made repeated efforts to induce her husband to resume cohabitation, but he positively refused. Even now she declares that she is willing to take him back. While it may be undeniable that defendant was suffering from a nervous ailment and had difficulty in going to sleep, it is quite obvious that he was tired of his wife in spite of her affection, and now is unwilling to try any arrangement that might enable them to live together. He abandoned her deliberately with the intention that the marriage relation shall no longer exist. Therefore, there can

be no question that the complainant is entitled to the divorce.

Defendant also urged that, even though the Court of Appeals should sustain the divorce, it should reduce the amount of alimony. After the war defendant's employer, the Washington Institute of Technology, cut his salary to $6,200, but in 1946 his income was $8,439.87, on which he paid a Federal income tax of $1,559.86. He testified that his salary in 1947 was $716.64 a month, and that in 1946 he received $450 for work done for a law firm. The chancellor's award is about 30 per cent of the husband's income after payment of the income tax. This is not so excessive as to oppress him. Complainant has no income of her own, but defendant suggested that she has no children and she ought to be able to find employment. After she was married she worked as a doctor's office assistant in order to help her struggling husband. During the war she also worked about nine months for the British Army Staff. However, upon her husband's advice, she gave up her work for the benefit of her health, though she says she is still under the care of a physician.

Defendant argued that his wife was awarded $150 per month as alimony *pendente lite,* and that she managed to live on that amount. But, of course, the fact that she raised no objection to the temporary award, and was able to exist on that allowance is not proof that the permanent award is excessive at this time. In a suit for divorce the determination of the amount of alimony which a husband must pay is left largely to the discretion of the trial court. The alimony award should be made in an amount sufficient to support the wife in reasonable comfort, the court considering the husband's wealth and earning capacity, their station in life, age and physical condition, the ability to work, the length of time they have lived together, the circumstances leading to their separation, and the fault which destroyed the home. *Timanus v. Timanus,* 178 Md. 640, 16 A. 2d 918; *Dougerty v. Dougherty,* 187 Md. 21, 48 A. 2d 451, 457.

Finding no abuse of discretion, we will affirm the chancellor's decree granting complainant the divorce *a mensa et thoro* and ordering defendant to pay her permanent alimony.

*Decree affirmed, with costs.*