## SCHEININ *v.* SCHEININ

[No. 182, October Term, 1951.]

*Decided June 12, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*John Brockenbrough Fox*, with whom was *David Friedman* on the brief, for the appellant.

*Albert L. Sklar* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Suit was brought by Sylvia Scheinin in the Circuit Court of Baltimore City against her husband, Jesse Scheinin, for a divorce *a mensa et thoro,* custody of their two sons, alimony and support, and counsel fee for her attorney. She charged her husband with cruelty of treatment and desertion. Defendant filed a cross-bill for a divorce charging desertion. This appeal is from a decree dismissing the cross-bill and awarding complainant the limited divorce, custody of the children, alimony and support at the rate of $35 per week, and a counsel fee of $100 for her attorney.

The parties were married in 1940. In June, 1949, they purchased as tenants by the entireties a small six-room house on Reisterstown Road in Baltimore. Defendant, an employee of the Hatters' Union, invited his secretary, who had separated from her husband, to board in the house, to help pay on the mortgage on the property. Complainant testified that her husband and his secretary moved into the house before she did, as one of her sons was sick at the home of her sister and

mother, and she stayed there for two weeks before coming to the new home. She testified that she prepared the meals for the family as well as for the boarder, and that her husband and the boarder would leave together in the morning and often did not return until after midnight. She testified that her husband stopped speaking to her, and she felt like a complete stranger in her own home. She declared that she "could not stand it any longer." She told her husband that she wanted the girl to move out of the house. She testified that he said "that she was not * * * going to leave this house until the time came that she had planned to go, and it was his house as well as mine, and I could not make her go."

Complainant was so distressed that she decided to tell the girl's mother "what was going on." Complainant then testified: "The next morning his secretary came in screaming her head off, and really woke up the whole household, and she cursed me." Complainant called the police, and when they arrived she asked them to put the girl out of her house on account of her language. But defendant informed them that the girl was his secretary and a boarder in the house and had paid her rent until the end of the week. Thereupon the police officers departed. Upon complainant's insistence, the girl finally moved out of the house in January, 1950.

Complainant testified that during the period from January to June, 1950, her husband showed his resentment by treating her with great cruelty. She said that he talked to her in abusive language and ridiculed her before the children. She also said that he struck her many times. When she was asked whether any marks were made upon her, she replied, "Yes, my body was bruised." One of her corroborating witnesses swore that her husband spoke to her in profane language. On the other hand, defendant urged that no witness saw him strike his wife prior to her suit for divorce, and she admitted that she did not show any of her bruises to anyone.

Complainant also testified that upon arriving home from a dinner on the evening of June 10, 1950, she found

her elder son in bed with her husband in the front bedroom, which she and her husband had used as their bedroom ever since June, 1949. She took the boy out of the room and put him back in one of the other rooms, and she slept that night with her husband in the front bedroom. On the following evening, however, according to her testimony, her husband told her that he did not want to have anything more to do with her, and in consequence of that demand she has been using one of the back rooms as her bedroom ever since. The parties have not cohabited since June, 1950, although they have continued to live in the same house.

In England matrimonial disputes were subject to the jurisdiction of the Ecclesiastical Courts, which were governed by the principles of the civil and canon law. According to the canon law, extreme cruelty was a ground for a judicial separation of husband and wife, but not a ground for dissolution of the contract of marriage. Under the rule adopted by the Ecclesiastical Courts, there must have been actual or threatened physical violence on the part of the defendant threatening bodily injury of the complainant to constitute cruelty. In the celebrated opinion in *Evans v. Evans*, 1 Hagg. Consist. 35, 4 Eng. Ec. 310, 161 Eng. Reprint 466, delivered in 1790, Lord Stowell said: "Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty: they are high moral offenses in the marriage state undoubtedly, not innocent surely in any state of life, but still they are not that cruelty against which the law can relieve. Under such misconduct of either of the parties, for it may exist on one side as well as on the other, the suffering party must bear in some degree the consequences of an injudicious connection; must subdue by decent resistance or by prudent conciliation; and if this cannot be done, both must suffer in silence. And if it be complained that by this inactivity of the courts much injustice may

be suffered, and much misery produced, the answer is that courts of justice do not pretend to furnish cures for all the miseries of human life."

In 1842 the Legislature of Maryland conferred jurisdiction in all applications for divorce upon the Chancellor or any County Court of the State sitting as a court of equity. That Act provided that divorces a mensa et thoro may be decreed for the following causes: cruelty of treatment, excessively vicious conduct, and abandonment and desertion. Laws 1841, Dec. Sess., ch. 262. The law still authorizes such divorces for the same causes. Code 1939, art. 16, sec. 41. In 1851 Chancellor Johnson announced in the High Court of Chancery that the words "cruelty of treatment" as contained in the Maryland divorce statute would be given the same interpretation as given to them by the English Ecclesiastical Courts. *Coles v. Coles,* 2 Md. Ch. 341, 351; *Daiger v. Daiger,* 2 Md. Ch. 335, 340, *Tayman v. Tayman,* 2 Md. Ch. 393, 399.

The Court of Appeals similarly stated in 1878 in *Childs v. Childs,* 49 Md. 509, 514, that the Legislature, in conferring jurisdiction in suits for divorce upon the Circuit Courts of the State, did not alter the law regulating the relation of husband and wife or diminish in any degree the obligations of marriage. Thus the law is established in this State that a divorce cannot be granted on the ground of cruelty of treatment merely because the parties have lived together unhappily as a result of unruly tempers and marital wranglings. We have adhered to the rule that marital neglect, rudeness of manner, and the use of profane and abusive language do not constitute cruelty. *Porter v. Porter,* 168 Md. 296, 177 A. 464; *Hyatt v. Hyatt,* 173 Md. 693, 196 A. 317; *Miller v. Miller,* 185 Md. 79, 42 A. 2d 915; *Sullivan v. Sullivan,* 199 Md. 594, 599, 87 A. 2d 604, 606. Ordinarily a single act of violence slight in character does not constitute cruelty of treatment as a cause for divorce. *Hoshall v. Hoshall,* 51 Md. 72, 34 Am. Rep. 298; *Goodhues v. Goodhues,* 90 Md. 292, 44 A. 990; *Gellar v. Gellar,*

159 Md. 236, 150 A. 717. But it is now accepted in Maryland, as well as generally throughout the country, that a single act may be sufficient to constitute the basis for a divorce on the ground of cruelty, if it indicates an intention to do serious bodily harm or is of such a character as to threaten serious danger in the future. *Hastings v. Hastings,* 147 Md. 177, 181, 127 A. 743; *Crabtree v. Crabtree,* 154 Ark. 401, 242 S. W. 804, 24 A. L. R. 912, 918.

In both England and the United States the modern decisions have broadened the definition of "cruelty." The courts have seen the changing social sense of pro-·priety, and now recognize that physical violence is not the most dreadful injury that can be inflicted upon persons of refined sensibility. In ancient days it was not understood that mental suffering had anything to do with bodily ills. In this connection Bishop says: "Under more enlightened physiological views, the legal doctrine has become settled, it is believed everywhere, that conduct which produces pain of mind is legal cruelty; so that whenever, operating either alone or in combination with something else, it creates a danger to the physical health, a divorce for it or the combination will be justifiable. * * * It would be a reproach to the law to permit a husband to ruin the health of his wife or kill her in one way, but not in any other. If the body is the only thing to be regarded, yet if we find various avenues to it, through any one of which may run the waters to drown its life or health, surely we cannot maintain that there is any principle whereby the approaches through one avenue shall be left open while the others are closed." 1 *Bishop, Marriage, Divorce and Separation,* secs. 1563, 1564.

So in Maryland physical violence is no longer essential to constitute cruelty of treatment. It is now accepted that cruelty as a cause for divorce includes any conduct on the part of the husband or wife which is calculated to seriously impair the health or permanently destroy the happiness of the other. Thus any misconduct of a

husband that endangers, or creates a reasonable apprehension that it will endanger, the wife's safety or health to a degree rendering it physically or mentally impracticable for her to properly discharge the marital duties constitutes cruelty within the meaning of the divorce statute. *Wendel v. Wendel,* 154 Md. 11, 139 A. 573. For instance, in *Silverberg v. Silverberg,* 148 Md. 682, 130 A. 325, this Court held that evidence that the husband had made false and malicious accusations of unchastity against his wife in the presence of others and had committed other acts designed to humiliate her justified a divorce *a mensa et thoro.*

In the instant case the chancellor apparently based his decision upon constructive desertion, rather than upon cruelty. It is accepted that any conduct of a husband that renders the marital relation intolerable and compels the wife to leave him may justify a divorce on the ground of constructive desertion, even though the conduct may not justify a divorce on the ground of cruelty. *Sullivan v. Sullivan,* 199 Md. 594, 600, 87 A. 2d 604, 607. Any misconduct of the husband will justify the wife in leaving him when it makes it impossible for her to live with him without loss of her health or self-respect, or gives her reasonable apprehension of bodily injury. If the husband's misconduct has been such as to render continuance of the marriage relation unbearable, justifying the wife in leaving him, he is the one who is guilty of desertion. *Polley v. Polley,* 128 Md. 60, 97 A. 526; *Schwartz v. Schwartz,* 158 Md. 80, 90, 148 A. 259; *Singewald v. Singewald,* 165 Md. 136, 166 A. 441; *Kline v. Kline,* 179 Md. 10, 16 A. 2d 924; *Fischer v. Fischer,* 182 Md. 281, 34 A. 2d 455; *Hockman v. Hockman,* 184 Md. 473, 41 A. 2d 510; *Miller v. Miller,* 185 Md. 79, 42 A. 2d 915; *Bradshaw v. Bradshaw,* 189 Md. 322, 55 A. 2d 719; *Gold v. Gold,* 191 Md. 533, 539, 62 A. 2d 540. It is beyond question that there may be a desertion although the husband and wife continue to live under the same roof. For desertion, as applied to husband and wife, signifies something more than merely

ceasing to live together. It means ceasing to live together as husband and wife. *Fleegle v. Fleegle,* 136 Md. 630, 634, 110 A. 889; *Roth v. Roth,* 145 Md. 74, 125 A. 556; *Fries v. Fries,* 166 Md. 604, 171 A. 703; *Dotterweich v. Dotterweich,* 174 Md. 697, 200 A. 523; *Jones v. Jones,* 186 Md. 312, 46 A. 2d 617; *Kelsey v. Kelsey,* 186 Md. 324, 326, 46 A. 2d 627.

Defendant denied that he ordered his wife out of the front bedroom. He claimed that she left of her own volition. The chancellor commented that defendant bluntly told his wife that "he did not want to have anything more to do with her." It is true that there is no direct corroboration of this particular conversation. Nevertheless, whatever may have been the language used by defendant on that occasion in June, 1950, we think the evidence, taken as a whole, is sufficient to support the charge of desertion, even if not the charge of cruelty of treatment. Complainant testified that her husband and his secretary had been taking nightly trips together and also had traveled together to the seashore since June, 1950. Complainant testified: "He continually talks against me to the children. He has told them I am no good and that I am a bum, and not to listen to me. * * * Anything that I tell the children to do he will do the opposite." When asked at the trial why she had not left the house and taken the children with her, she replied that she had no place to go.

The chancellor, who had the advantage of seeing and hearing the witnesses, believed complainant rather than defendant, and we are unwilling to say that he was clearly wrong in his decision. Defendant's continued misconduct naturally would have the effect of making the matrimonial relation intolerable. In *Shutt v. Shutt,* 71 Md. 193, 196, 17 A. 1024, Chief Judge Alvey declared that, although the Legislature had not included habitual drunkenness as a cause of divorce, it may be considered in connection with other offenses as an element in the misconduct of the offending party. Likewise, although the use of profane and indecent language by a husband

does not of itself constitute cruelty, yet a husband's habit of using such language before his wife, especially in the presence of the children, is a material fact that may be considered together with other misconduct in establishing cruelty. The fact that a husband curses his wife occasionally, or calls her "feeble-minded" or "nutty," or casts other derogatory epithets upon her, does not entitle her to a divorce, unless it endangers her health. *Oertel v. Oertel,* 145 Md. 177, 125 A. 545; *McKane v. McKane,* 152 Md. 515, 137 A. 288; *Hillwood v. Hillwood,* 159 Md. 167, 150 A. 286. But where a husband habitually addresses his wife in vile and profane language, and occasionally resorts to acts of physical violence, the entire course of conduct may constitute cruelty, although the physical violence alone may not be sufficient to justify a divorce.

Likewise, evidence that a husband is infatuated with, or extremely attentive to, another woman and treats his wife with silent contempt is entitled to consideration in determining whether he has been guilty of constructive desertion. As far back as 1897 the Supreme Court of Wisconsin said: "For a husband and wife to live and sleep in the same house, and eat at the same table food prepared by the wife, without the husband speaking to the wife, except in anger, for a period of three months at a time, must have been, at least, very disagreeable, if not unbearable. * * * It certainly evinced abnormal affections, persistent wantonness, and deliberate perversity. The effect of such conduct upon a nervous, sensitive woman can better be imagined than described * * *." *Reinhard v. Reinhard,* 96 Wis. 555, 71 N. W. 803, 804.

It is not important that defendant did not drive his wife from home by force. If ill temper, vile language and artifice succeed, they are as reprehensible as forcible compulsion. In either case the offending party is responsible for the separation. We are satisfied that defendant either contrived or wilfully permitted the cessation of cohabitation, and accepted it with complacency. It is not necessary for a wife to prove that her husband,

in committing wrongful acts, entertained a settled purpose to drive her away; it is sufficient if the separation was the natural consequences of his acts.

Finally, defendant claimed that he made "a couple of overtures" to his wife. But he gave no particulars of the alleged overtures, and he did not convince the Court that he actually desired to resume cohabitation with his wife. He still employs the secretary, with whom he has been very intimate and with whom he has traveled on pleasure trips to other States. Where a separation is not caused by any wrongful conduct on the part of the wife, she is entitled to a divorce if her husband has made no offer to resume cohabitation under such circumstances as would warrant a reasonable belief that matrimonial relations could be resumed without endangering her health or reasonable comfort. *Simmont v. Simmont,* 160 Md. 422, 153 A. 665. The chancellor found that there was no hope of reconciliation.

For these reasons we will affirm the decree of the chancellor granting complainant a divorce *a mensa et thoro* and other relief and dismissing defendant's cross-bill.

*Decree affirmed, with costs.*

MARKELL, J., delivered the following dissenting opinion.

I dissent from the decision and the opinion because (1) the evidence does not show that either party is entitled to a divorce and (2) the opinion is a departure from the decisions of this court by an extension of the scope of both (*a*) cruelty (apparently not a basis of the decision and therefore not a necessary or relevant subject of discussion) and (*b*) constructive desertion, as grounds for divorce.

If we assume that the circumstances attending the move by the husband and his secretary to the triangular husband-secretary-wife home, two weeks before the wife went, would not have entitled the wife to a divorce on the ground of adultery, they would at least have justified

her in refusing to follow or to return to him. *Shilbach v. Shilbach,* 138 Md. 56, 59; *Meeks v. Meeks,* 189 Md. 80, 87; *Thomas v. Thomas,* 197 Md. 15, 21, 78 A. 2d 225, 227. The same would seem to be true if the wife had left—his roof or his bed—after the belated ejection of the secretary from the house, but after his continued intensive cultivation of her acquaintance outside the house. If the termination of "marital relations" was at the wife's instance, she was not thereby guilty of desertion or any marital offense and there is no basis for a divorce to the husband from the wife. To say that the wife is entitled to a divorce from the husband is a very different matter.

In *Fleegle v. Fleegle,* 136 Md. 630, it was held, and in later cases it was reiterated, that refusal of "marital relations" without just cause constitutes "desertion", as a ground for divorce. But never before have these cases been given the extensive gloss given them in the instant case. "It is beyond question that there may be a desertion although the husband and wife continue to live under the same roof. For desertion, as applied to husband and wife, signifies something more than merely ceasing to live together. It means ceasing to live together as husband and wife." Refusal ceases to be an element. In other words, any cessation of "marital relations" constitutes desertion, of one spouse by the other, and if one spouse's conduct justifies the other in refusing, the former and not the latter is guilty of desertion. In the instant case the wife naturally (as her testimony shows) was glad to be rid of him (so far as she was rid of him) and made no effort to regain his attention. She was under no obligation to do so. But if, notwithstanding his conduct, she demanded from him token recognition of her minority interest in his affections then she was at least required to say so before charging him with refusal.

Peculiarly applicable to divorce cases is the rule that when the trial judge sees and hears the witnesses this court will not reverse on a question of credibility unless

the trial judge was clearly wrong. But I know of no magic by which a trial judge by looking at two spouses and hearing them testify can determine which (if either) is telling the truth, necessarily without corroboration, about the ultimate whys and wherefores of their most intimate relations—or lack of relations. I think the settled policy of this State not to grant divorces on light and trivial grounds would be inverted and the output (already sufficient) of collusive and other perjured divorces increased by the decision and opinion in the instant case.

As I have said, the discussion of cruelty in the opinion seems entirely foreign to the instant case. Be that as it may, neither the cases cited nor any other case in this court supports the asserted trend of decisions broadening "cruelty" from physical cruelty to the fantastic forms of "mental cruelty" that are recognized in the large divorce mills.

In recent cases we have noted that the fact that a wife continues to live under the same roof does not indicate that she regards her husband's acts of violence as creating "danger to life, limb or health." *Maranto v. Maranto,* 192 Md. 214, 220-221; *Collins v. Collins,* 184 Md. 655, 662; *Schriver v. Schriver,* 185 Md. 227, 231.

I think the decree of divorce should be reversed and the bill dismissed, without prejudice, however, to any bill for divorce on the ground of adultery committed after cessation of marital relations between the parties.