## LOMBARDI *v.* LOMBARDI

[No. 72, October Term, 1952.]

*Decided February 5, 1953.*

430

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Sidney Blum,* with whom was *Jacob Blum* on the brief, for the appellant.

*Hector J. Ciotti,* with whom was *M. King Hill, Jr.,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree awarding a wife permanent alimony of $12 per week and counsel fee of $150, and dismissing the husband's cross-bill on the ground of desertion. The chancellor filed no opinion, but merely announced his conclusions on the facts.

The parties were married in Italy in 1922 and one daughter was born as a result of the marriage during the following year. In 1924 the appellant came to America. He sent her money from time to time. In 1948, 24 years later, he gave her a somewhat equivocal invitation to come to Baltimore. He wrote that he would not send her any more letters or money if she did not come; that she would have to get along with his sister-in-law if she came; "otherwise you can get someone else and I will get someone else." She borrowed the money (which he afterwards repaid) and came to Baltimore, without the daughter, in December 1948. According to her testimony her husband beat her and his sister-in-law also beat her and reviled her upon her arrival at 232 East Montgomery Street, and every day she was there. She lived with her husband, except for a visit to her relatives in New York for about two months, until she left on October 1, 1949.

Her testimony as to the repeated beatings is disputed and not fully corroborated. While several witnesses testified that she sometimes had bruises and once a black eye, no one saw the beatings. The husband and sister-in-law denied that they ever occurred, as did some of the neighbors. The sister-in-law testified that on one occasion she had fallen down the stairs. A police matron testified she saw bruises on the appellee's body on one occasion when she had her husband arrested. But it was shown that this hearing was on October 8, 1949, a week after she had left the home. She testified to beatings but told the magistrate she did not want her husband jailed, that she only wanted support. The case was dismissed. It seems clear that the beatings were not such as to put her in fear of her life. It was testified and not denied, however, that the husband said at that time he did not want her to come back under any conditions.

One of her grievances was that the husband did not meet her in New Yirk when she landed, and upbraided her for leaving the daughter in Italy. The daughter did come to America in 1950, but only stayed with her father for a few days because they did not get along and he refused to discuss reconciliation with the mother. This, of course, was after the separation but long before the filing of the bill. Another grievance was the fact that the husband, in August, 1949, conveyed the leasehold property 232 East Montgomery Street, which he owned, to a straw man, who in turn conveyed it to the appellant for life, then to his sister-in-law for life, then to his daughter and the sister-in-law's daughter. In his deed he described himself as "widower". The sister-in-law testified she had loaned him $6,000 for improvements, and the deed was for her protection. She admitted that she had never had the money in bank; she said it came from her husband's savings, which is highly improbable. She and her husband took an active part in procuring the conveyance.

We think the evidence supports the chancellor's action. The husband's conduct towards his wife, after 27 years separation, was not calculated to regain or retain her affections. She found herself in a strange land (she did not speak English) and in a house dominated by a sister-in-law and her family. The husband wrote to her during her visit to relatives in New York, saying "Now that you are with your own brother I hope you keep a long company", and he never asked her to return. He admitted that she wanted to come back at the time of the magistrate's hearing but he refused "because she left me". That was his attitude at the trial, although she testified that she was willing to live with him but not with the sister-in-law. His treatment of her from the time of her arrival, if not amounting to legal cruelty, was at least such as to justify her in protesting. It seems clear that the separation was not intended to be final upon her part, and that he had determined to make it so at that time if not before. Thus, even if we assume, without deciding, that the husband's conduct up to that point did not add up to legal cruelty, or supply grounds for a divorce, as distinguished from justification for separation on her part, (cf. *Scheinin v. Scheinin,* 200 Md. 282, 89 A. 2d 609), his refusal to reconcile would be enough to put him in the wrong. *Grubb v. Grubb,* 200 Md. 452, 456, 90 A. 2d 175, 177. As we said in that case: "In short, it was the refusal of the husband to discuss reconciliation, or to make any real effort to save the marriage, rather than the wife's demand for a separate home, that made the separation final. * * * We think the chancellor's finding of constructive desertion on the husband's part is supported by the evidence."

The appellant does not complain of the amount of the allowance for alimony or counsel fee.

*Decree affirmed, with costs.*