## RIGSBY v. RIGSBY.

### Opinion delivered April 8, 1907.

DIVORCE—DESERTION.—Where a husband by his misconduct drove his wife away, and made no effort at reconciliation, and contributed nothing thereafter toward her support, the courts, after the expiration of a reasonable time, are justified in treating his conduct as in law an abandonment.

Appeal from Garland Chancery Court; *Alphonzo Curl,* Chancellor; reversed.

*E. H. Vance, Jr.,* for appellant.

If, in the trouble growing out of the wood transaction between the two youths, appellant was in anywise at fault, it was condoned by appellee in continuing to live with her. 62 Ark. 611. Where it is shown that the conduct of the husband toward the wife is such as to make it dangerous or unsafe for her to continue to live with him, where his conduct amounts to desertion, or is such as to make her life with him intolerable, her cross bill should prevail where the husband has sued for divorce. 77 Ark. 94; 73 Ark. 281; 97 S. W. 659; 17 Cent. Dig. 197.

*Wood & Henderson,* for appellee.

The facts and circumstances afforded no reasonable cause to appellant for leaving the appellee, but on the contrary establish a clear case of desertion.

Riddick, J. This is an action for divorce brought by John H. Rigsby against his wife, Matilda Rigsby, on the ground of wilful desertion. The defendant filed an answer, denying that she had wilfully deserted the plaintiff and alleging that, though she had left the home of plaintiff, it was because his conduct was such as to make her condition in life intolerable and render it necessary that she should leave his home; that the separation between them was in fact a desertion on his part.

These parties were married March 10, 1902, at Hot Springs, Arkansas. At the time of the marriage he had two sons, 18 and 19 years of age respectively. She had four children, two girls and two boys. The girls were aged 11 and 16, and the boys 14 and 17, respectively. Besides these each of the parties had adult married children who lived apart from them. Each of the parties owned a small farm and some personal property. After marriage the plaintiff and defendant lived peaceably together for several months, but neither of them seemed to be much attached to the children of the other, and this finally led to their separation. Tom, the eldest son of the defendant, and Hiram, the youngest son of the plaintiff, undertook to cut and ship to market a carload of cord wood together. When the wood was shipped, Hiram procured the bill of lading, and Tom grew suspicious and told his mother that Hiram intended to collect the money and cheat him out of his portion of the proceeds. These fears of

Tom proved to be groundless, but his step-father was angered by his charges against his son, and afterwards told him that he could not live at plaintiff's home longer, but might return occasionally and visit his mother. This was the beginning of the estrangement between the plaintiff and defendant. The fact that her son had been compelled to leave her home angered the defendant, and caused her occasionally to display some resentment toward plaintiff and his sons. After the plaintiff had forbidden Tom to make his home on his place, the defendant began to object to the presence of the oldest son of plaintiff, and declined to wash his clothing, and probably did other things that were more or less exasperating to plaintiff. But plaintiff was himself by no means without fault. The 16-year daughter of defendant went during the leisure season, when her labor was not needed at home, on a visit to her married sister. Witnesses for defendant say that plaintiff expressly consented to this visit. Her mother, the defendant, testified that her daughter went to the house of her sister, who was keeping a boarding house, to work and earn money to buy clothing that she needed, and which she had no other way of obtaining. Defendant admits that he had never bought the girl any clothing except a pair of shoes and a parasol, and that he made no objection to the proposed visit, and yet, after she had gone, he refused to allow her to return, and declared that neither she nor Tom should live on the place again. So far as Tom was concerned, he was nearly grown, had lived away from home before, and could shift for himself. The refusal to allow him to live on the place with his mother had some reason to support it, for Tom had made charges against the son of plaintiff reflecting upon his honesty, and, considering Tom's age and the fact that he had both a brother and sister married with whom he could find a home, the order as to him, though it irritated his mother, involved no great hardship. But the refusal to allow the 16-year-old daughter to return home to her mother was altogether different. It is not shown that this daughter had been guilty of any disrespect towards either the plaintiff or his sons. She, in common with her brothers and sister, had worked on the farm and assisted to make crops, and had also assisted in the ordinary house work of the place, so that it could not have

been much of a burden to have her on the farm. Besides, her sex and tender age required that she should be under the control and care of her mother. The conduct of the plaintiff in refusing to allow her to return was, so far as the evidence shows, utterly unreasonable. As the mother was entitled to the society and services of her young daughter, as she owed a duty to see that she was properly reared and protected during the period of her girlhood, this conduct of plaintiff would have gone far towards justifying the defendant in leaving his home in order to be with her child had she chosen to do so. *Friend* v. *Friend,* 53 Ark. 543. But she did not leave, and the daughter remained away, living either with her married brother or sister.

The younger son of defendant also left home and went to live with his brother in another county, so that only one of the children of defendant, a daughter 11 or 12 years of age, made her home with her mother, while of the two sons of plaintiff, the older left and the younger remained. And these parties, notwithstanding disagreements about their children, continued to live together and upon most occasions to treat each other as if they felt mutual attachment and respect. The final separation came about in this way. In April, 1903, at request of his brother with whom he lived, Tom came to see his mother about a cow she had promised to his brother. Upon his arrival one of the sons of plaintiff went to the field where the plaintiff was at work and notified him, and plaintiff at once returned to the house, and ordered Tom to leave. Tom replied that he had come to see his mother, and would leave when he got ready. Plaintiff testified that Tom, who was standing near the fire place reached for a poker, but that plaintiff grabbed it first; that Tom then got hold of the shovel, and that plaintiff struck Tom on the head with the poker to make him leave. The defendant came in and tried to protect her son. The son of plaintiff then came up, and as Tom ran out of the house they clinched and fought in the yard. The defendant pulled them apart. Tom then picked up a rock, but did not throw it. Plaintiff and his son say that Tom next grabbed an axe and advanced upon them, and that they then got their guns but made no attempt to use them. Tom and his mother deny that he picked up the axe, but say that plaintiff attempted to shoot Tom. Anyway plain-

tiff and his son did procure guns, and Tom, before this display of force, retired behind the barn where his mother went to him and found him bleeding profusely from a wound on his forehead caused by the stroke which plaintiff made with the poker. Excited by the condition of her son and by what she considered an unwarranted attack upon him, defendant at once returned to the house, procured some salve with which to dress Tom's wounds, and, saying to her husband, "You have done yourself up with me," she left with her son and her young daughter. These three walked fifteen miles to the home of her married son. She said that she did not take time to get her wagon and team for the reason that in the excited state of her husband and his son she feared that they might have further trouble and kill Tom. On the next day Tom swore out a warrant for the arrest of the plaintiff and his son, charging them with assault. They pleaded guilty, and paid a small fine. The defendant returned with an officer and moved her furniture and other personal property from the home of the defendant to that of her son, and the parties have since lived apart.

Neither of them have since made any overtures for a reconciliation. Though they sometimes met at church or at other public gatherings, they simply gave each other a word of recognition and passed on. Plaintiff not only did not show any regret at his wife's departure or desire for her return, but he seems to have harbored some resentment against her and refused to look after or give any attention to the few hogs or other personal property she left on the place. But when the hogs were sold to a neighbor plaintiff readily agreed to take charge of them upon the promise that he should have half of them.

We have not undertaken to set out all the evidence read before the chancellor, but we have given it careful consideration, and feel convinced that it shows that plaintiff was much more to blame for the separation than his wife, and that he made out no cause for a divorce.

As to the cross complaint: the separation between plaintiff and his wife took place as before stated on the 14th day of April, 1903. He commenced his action for divorce on the 19th of April, 1904, just five days over a year after she left his home. We are not certain that at that time either of the

parties was entitled to a divorce. But the substituted answer and cross complaint of defendant was filed on the 5th day of October, 1905, nearly two years and a half after the separation. We have said that in our opinion plaintiff was more to blame for the separation than his wife. He refused to allow her sixteen-year-old daughter to live with her mother. He forbade her son, Tom, a boy of eighteen years of age, to visit his mother, and when this boy came at the request of his brother to see his mother on a business matter he peremptorily ordered him to leave the place. The boy was not misbehaving in any way, and had only come to see his mother about a cow that she had promised to give his brother. Without any reasonable excuse plaintiff precipitated a quarrel with him that ended in an assault in which he struck the boy several times with an iron poker. Though plaintiff probably did not intend to seriously hurt the boy, and though the wounds were not serious, yet the strokes caused the blood to flow, and his mother was naturally alarmed for the safety of her son. In leaving with him she did no more than should have been expected of any mother under the circumstances. Her departure was the natural result of plaintiff's treatment of her son. But, though the evidence shows that plaintiff's conduct brought about this separation, he has never expressed the slightest regret at his conduct or at his wife's departure, nor made any efforts whatever towards a reconciliation, nor contributed anything towards her support since she left. His conduct shows clearly that he has never desired that his wife should return. As her departure was caused by his unreasonable conduct, and as he has never expressed any regret or invited or tried in any way to induce his wife to return, the courts, after the expiration of a reasonable time, are justified in treating his conduct as in law an abandonment of her. 14 Cyc. 613; 1 Nelson on Div. § 64; 1 Bishop on Div. 1710. As nearly two and a half years had expired before the filing of the substituted answer and cross complaint in which she asks for a divorce, we are of the opinion that the evidence sustains the allegation of wilful desertion for more than one year without reasonable cause, and that she is entitled to a divorce on that ground.

We are therefore of the opinion that the chancellor erred

in granting a divorce to plaintiff and dismissing the cross complaint of defendant.

Judgment reversed and cause remanded with order that the chancellor enter a decree in favor of defendant for divorce on the cross complaint, and that he make such orders in reference to alimony as may be required by law.