ROSENBAUM *v.* ROSENBAUM.

4-7267                                     177 S. W. 2d 926

Opinion delivered February 21, 1944.

*McKay & McKay* and *Pat Robinson,* for appellant.

*Wade Kitchens,* for appellee.

Robins, J. Appellant and appellee were married on June 26, 1942. On October 7, 1942, they separated, and thereafter appellee instituted this suit for maintenance, alleging that appellant, though well able to do so, had failed and refused to support her since the separation; that she was entitled to an allowance of not less than $100 per month for her support. The lower court rendered a decree ordering appellant to pay appellee the sum of $30 per month until further orders of the court, and also $60 for solicitor's fee. Appellant has prosecuted an appeal from the lower court's decree, and appellee has cross-appealed therefrom.

No witnesses, except appellant and appellee, testified in the trial below. The evidence disclosed that at the time of the marriage appellant was fifty-two years old and appellee was twenty-seven years of age. Appellant had been married three times, and appellee once, before they married each other. Appellant had two boys, twelve and fourteen years old, respectively, by a former marriage, and appellee had a little girl six years old, the daughter of her divorced husband. Appellant apparently was a man of more than average earning capacity, the testimony indicating that he had a permanent job with an oil company and earned in the neighborhood of $300 per month.

The discord between this couple seemed to originate from several causes: Inability of their children to get along; complaints by appellant that appellee was not

properly controlling her daughter; a demand on the part of appellant that she give up her little girl and turn her over to relatives to rear; complaints by appellant as to their living expenses, as to the cost of an operation which was required for appellee soon after their marriage and as to expenditures made on appellee's child; and disagreement over the desire of appellant to take out the setting of a diamond ring he had given appellee when they married and substitute another stone therefor, it being claimed by appellant that appellee had agreed that, inasmuch as the stone had originally belonged to the deceased mother of appellant's boys and that appellant had promised the diamond to the boys as a memento of their mother, appellee should wear the ring, but that it would still belong to the boys. This trouble between them finally resulted in appellee moving out of the home of appellant and returning with her daughter to her former home. After appellee left appellant he made two trips to see her and asked her to return and live with him.

It was originally held by this court that an action by the wife for separate maintenance would not lie, but that such relief could only be obtained in a suit for divorce. This rule, however, was modified in the case of *Wood* v. *Wood*, 54 Ark. 172, 15 S. W. 459. In that case Mr. Justice HEMINGWAY, speaking for the court, quoted with approval this excerpt from Schouler on Husband and Wife: "If a wife is abandoned by her husband, or refused cohabitation, without fault on her part, and being left without adequate means of support, a bill in equity will lie to compel the husband to support her, without asking for or procuring a decree of divorce."

While corroboration of the testimony of a party seeking a divorce is required, this rule does not extend to action for maintenance brought by the wife. In such a case the wife must establish her grounds for relief by a preponderance of the evidence, but corroboration of her testimony is not essential to her successful prosecution of such an action. 30 C. J., p. 1088.

Appellee testified that appellant insisted that she give up her six-year-old daughter, and her statement as

to this is somewhat strengthened by appellant's own admissions as to his feelings toward his little stepdaughter. Appellant married appellee knowing that she had this daughter and with a full realization that appellee owed her child the love and care that only a mother can give. Judge RIDDICK, speaking for the court, in the case of *Rigsby* v. *Rigsby,* 82 Ark. 278, 101 S. W. 727, wherein was involved a question similar to the one being considered here, said: "As the mother was entitled to the society and services of her young daughter, as she owed a duty to see that she was properly reared and protected during the period of her girlhood; this conduct of plaintiff (refusal to permit his stepdaughter to remain in the home) would have gone far towards justifying the defendant in leaving his home in order to be with her child had she chosen to do so."

Appellant, therefore, had no right to insist that his wife give up her daughter, and doubtless this insistence on his part led to the rupture of their marital relations. These parties both appeared and testified before the chancellor, who thus had an opportunity to appraise their testimony from their demeanor on the witness stand that is not available to an appellate court. A majority of the court is of the opinion that the chancellor's finding, that the separation was brought about by such wrongful conduct of appellant as justified appellee in leaving his home, and that the good faith of appellant's invitation to his wife to return to him was not established, is not against the preponderance of the testimony.

Appellee on her cross-appeal urges that the amount allowed to her by the lower court for her maintenance was inadequate. While this amount was comparatively small when considered in relation to the earnings of appellant, the lower court properly took into consideration the fact that appellee was able to earn at least a portion of the amount necessary for her support.

During the pendency of this appeal, an order was made by this court for appellant to pay expenses of an operation for appellee that was found necessary, not exceeding $150. It appears that all of the expenses of

this operation incurred by appellee, except the sum of $37.95, were paid by an insurance company which had issued a policy of health insurance for the benefit of appellee.

It follows from what has been said that the decree of the lower court must be affirmed, and the amount which appellant is required to pay under the order heretofore made by this court, relative to defraying expenses of appellee's operation, is reduced to $37.95.