AUGUST SCHNEIDER, petitioner,

*v.*

CATHERINE SCHNEIDER, defendant.

[Decided April 22d, 1947.]

*Messrs. Weitz & Lasser (Mr. Carl Weitz, of counsel), for the petitioner.*

*Messrs. Burke, Sheridan & Hourigan (Mr. John J. Joel, of counsel), for the defendant.*

VAN WINKLE, A. M.

(1) The husband sued the wife for a divorce on the ground of desertion alleged to have begun in March, 1944, whereupon the wife counter-claimed for separate maintenance. The parties were married on April 27th, 1943. The husband is about forty-four years old and the wife is about eight years younger. The wife has a child now ten years old by a former husband who lived with the parties during the time that they lived together.

The child of a wife by a former husband is not within the purview of our separate maintenance statute (*R. S.* 2:50-39) which provides for the separate maintenance of a wife and children of the parties; and so the counter-claim of the wife in this case does not pray for the maintenance of her child by her former husband.

The husband, with little command of the English language, testified that there was trouble with the wife about the child beginning two weeks after the marriage. "She say to me, I have nothing to say about the child, that's not my child, I am not the father from that child. She got very hot temper, and she called me * * * [abusive names] * * * She got mad, mad, pulled me on hair, left and right on the face * * * I said to my wife, please tell Marie to wash the hands and the face to start eat. She tell me * * * [abusive names] I am not the father." Further, he testified there were arguments about his giving money with which to buy clothing for the child; that the wife asked him to adopt the child and that he refused to do that. "I said no, I cannot be father from that child here. She tell me all right, get out, called me dirty names again." While the wife did not specifically deny any of this testimony, she did testify that the husband's drinking was the cause of all the trouble.

The husband and wife separated, after which they again lived together. They finally separated, as the husband testified, on March 27th, 1944.

(2) The separation of husband and wife is disfavored, and when they are living in a state of separation, and neither has committed a matrimonial offense warranting a divorce, each has a right to terminate the separation. Upon a husband making a *bona fide* effort for a resumption of marital relations in a marital home to be provided by him he is not to be held as consenting to or acquiescing in a continuance of the separate living. If the wife refuses a *bona fide* offer of the husband to resume marital living in a marital home, she thereupon becomes a deserter; and she is not to have a decree for separate maintenance.

(3) In this case the husband has made *bona fide* efforts for a resumption of marital relations in a marital home to be

provided by him, but the wife, while professing a willingness to so live with him, has continuously refused and still refuses to do so unless the husband permits her child by her former husband to live in any marital home as before.

Counsel for the wife contends that because the husband on his marriage voluntarily received the child into the marital home and there maintained it during the period that the husband and wife lived together, that now—although the husband and wife have been living separately for several years and the child has been with the wife for all of the separation period—that the wife has a right to refuse, as she does, to live with the husband unless he consents, as he does not, that the child shall live with her in any marital home as before as one of the family, so to speak. And, further, that, because the husband does not so consent, the wife is entitled to a decree for separate maintenance.

However, while the living of the child with the husband and wife, as before, as one of the family, so to speak, would inevitably result in the husband's maintaining the child, counsel has presented no argument concerning this feature.

In formulating the very general argument of counsel for the wife, that it might be precisely dealt with and disposed of, it was found to rest on assumptions for which the law gives no support and concerning which there is comparatively little in the law books, as should be expected, and concerning which there is nothing in point in New Jersey except a definition which is hereinafter stated.

These assumptions are (1) that a legal duty rests upon the husband as a step-father to receive and maintain the child in any marital home, and (2) that the husband now stands *in loco parentis* to the child and so is under a legal duty to receive and maintain the child in any marital home.

(4) A step-father, as such, is under no obligation by the English common law, to maintain a child of his wife by a former marriage. (See *Cooper* v. *Martin,* 4 *East* 76; 102 *Reprint* 759; *Stone* v. *Carr,* 3 *Esp.* 1; 170 *Reprint* 517; *Tuff* v. *Harrison,* 4 *T. R.* 118; 100 *Reprint* 926.)

Other-state decisions on the subject, a number of which are collected in a footnote in *Corp. Jur., tit. "Parent and Child,"*

§ 182, show that the American common law is to the same effect. The law allows a step-father to refuse to provide for a step-child or to take it into his family. (See *Chicago M. School* v. *Scott,* 157 *Ill. App.* 350.) If a step-father voluntarily accepts into his family a child of his wife by a former husband and assumes the obligation of a parent for maintenance, the obligation continues only as long as he permits the child to be in the home. (See *Capek* v. *Kropick,* 21 *N. E. Rep.* 836; 129 *Ill.* 509.)

(5) The New Jersey definition of a person *in loco parentis* is found in *Brinkerhoff* v. *Merselis* (1855), 24 *N. J. Law* 680, namely:

"The proper definition of a person *in loco parentis* to a child is, a person who means to put himself in the situation of the lawful father of the child, with reference to the father's office and duty of making provision for the child. 3 *Mylne & Cr.* 359; *Powys* v. *Mansfield, ex parte Pye,* 19 *Vesey* 154; or as defined by Sir William Grant, master of the rolls, it is 'a person assuming the parental character and discharging parental duties.' *Wetherby* v. *Dixon,* 19 *Vesey* 412."

And in giving the definition our court, as we see, gave also the old English authorities on which it rested the definition. This definition was adopted in this court in *Mott* v. *Iossa* (1935), 119 *N. J. Eq.* 185 (at *p.* 188).

We see that under this definition that the husband in this case must *mean* to act *in loco parentis* toward his wife's child by a former marriage before he may be held to have assumed the burdens of that relationship. The relationship does not exist unless it is self-imposed. The burden may not be thrust upon him by his wife's demand. He is not to be forced into the relationship against his will.

Professor Pomeroy in his 2 *Eq. Jur.* (4th ed.) 1027, § 556 and note, discussed and endeavored to fix the true legal significance of the term *in loco parentis;* and in his full note he gave the result of his examination of the English cases referred to by our court in *Brinkerhoff* v. *Merselis, supra,* one of which cases had been decided by Lord Eldon. "Lord Eldon has given to the expression *in loco parentis* a definition which I readily adopt" wrote Professor Pomeroy, "because it seems

to embrace all that is necessary to carry into effect the object and meaning of the rule. He says it is a person *meaning"* (the italics are Professor Pomeroy's) "to put himself *in loco parentis*—in the situation of the person described as the lawful father of the child; but this definition must, I conceive, be considered as applicable to those parental offices and duties to which the subject in question has reference, namely, to the office and duty of the parent to make provision for the child. The offices and duties of a parent are infinitely various, some having no connection whatever with making a provision for a child; and it would be most illogical, from the mere exercise of any of such offices or duties by one not a father, to infer an intention in such person to assume also the duty of providing for the child. The relative situations of the friend and of the father may make this unnecessary and the other benefits most essential. Sir William Grant's definition is 'a person assuming the parental character or discharging parental duties,' which may seem not to differ much from Lord Eldon's; but it wants that which, to my mind, constitutes the principal value of Lord Eldon's definition, namely, the referring to the intention, rather than the act of the party."

In this case, any discussion of the term *in loco parentis* and its application, must have relation to the wife's condition that she will not live with the husband as a wife in a marital home to be provided by him unless he consents that the child shall live there too. In short, the husband is thus called upon to act *in loco parentis* to the child at least so far as maintenance is concerned. However, as we have seen, a person *in loco parentis* is one who *means* to put himself in the situation of a lawful father of a child with relation to the father's duty of making provision or maintenance for the child. (See *Brody* v. *Jones & Loughlin* (1941), 149 *Pa. Super.* 602; 21 *Atl. Rep.* (2d) 437.

Counsel for the wife does not consider that the relationship *in loco parentis* may be temporary so far as maintenance is concerned. Assuming that the relationship once existed in this case, it has not continued to exist and it may not again exist without the husband *meaning* that it shall exist. *"Loco*

*parentis* has to do with custody, liability to support, and the like, and is temporary in character, and is not to be likened to that of adoption. The one is temporary in character, the other permanent and abiding. (See *In re McCardle's Estate* (1934), *95 Col.* 250; *35 Pac. Rep. (2d)* 850.)

(6) The justification advanced by the counsel for the husband for refusing to receive the child into any marital home of the husband and wife was that the child was a third party whose presence in any marital home would jeopardize the harmony of the marital relationship. This contention has not been considered by me because of the conclusions that I have come to as expressed herein.

(7) The husband's petition for divorce is to be dismissed because he has not borne the burden of proof as to the continuity of the alleged desertion. The wife's counter-claim for separate maintenance is also to be dismissed, but, because of the circumstances, the dismissal may be without prejudice if counsel for the wife so desires.