## CONCETTA PARAGIAN, PLAINTIFF, v. HAROLD PARAGIAN, DEFENDANT.

Juvenile and Domestic Relations Court
Bergen County

Decided December 16, 1957.

*Mr. Carl Weitz,* attorney for defendant.

*Mr. Joseph Castel,* attorney for plaintiff.

KOLE, J. J. D. R. C. Plaintiff seeks support in this action from her husband, the defendant, for herself and her two minor children by the defendant, claiming that his present support is inadequate. Defendant contends the amount she

is now getting is adequate and that her refusal to rid the household of her child (Kathleen, age 7) by another constitutes such desertion by her as to warrant denial of any support for her. In support of the latter contention defendant relies on *Schneider v. Schneider,* 25 *N. J. Misc.* 180, 52 *A. 2d* 564 (*Ch.* 1947).

The parties reside in the same household, but since July 29, 1957 they have slept in separate rooms. Since August 1, 1957 plaintiff has not prepared meals for defendant; he eats at his mother's. His mother owns the house in which the parties reside but has a separate apartment therein.

The plaintiff and defendant have been married four years. They have two children of their own—Harold Jr., age 3½ years, and Robert, a child with cerebral palsy, age 2 years. At the time of the marriage defendant knew that plaintiff had Kathleen and that Kathleen would reside with them. Nevertheless, he married plaintiff. There is a conflict as to when defendant first objected to Kathleen's continuance in the household: plaintiff claims that he first objected in late August 1957, in a letter she received from his attorney, who was also the attorney for the husband in the *Schneider* case; defendant claims that he has been objecting since one year after their marriage.

Even if defendant's claim be deemed to be in accord with the fact, however, it cannot aid him. The *Schneider* case merely holds that a wife cannot get separate maintenance where she insists, as a condition of residing with her husband, that he support her child by another as a member of the household. Advisory Master Van Winkle specifically refused to consider the husband's further contention that he was justified in refusing to receive the child into the marital home because its presence would jeopardize the harmony of the marital relationship. All the case held was that a husband could not be legally compelled to accept the *loco parentis* duty of support of such a child.

It should be noted that decisions in other jurisdictions appear to be directly opposed to the *Schneider* case. They hold the husband chargeable with constructive desertion under

such circumstances. 17 *Am. Jur., Divorce and Separation,* § 119, *p.* 335; *Williamson v. Williamson,* 183 *Ky.* 435, 209 *S. W.* 503, 3 *A. L. R.* 799 (*Ct. App.* 1919); *Rigsby v. Rigsby,* 82 *Ark.* 278, 101 *S. W.* 727 (*Sup. Ct.* 1907); *Friend v. Friend,* 53 *Mich.* 543, 19 *N. W.* 176 (*Sup. Ct.* 1884); *Rosenbaum v. Rosenbaum,* 206 *Ark.* 865, 177 *S. W.* 2d 926 (*Sup. Ct.* 1944).

In the *Williamson* case, *supra* [183 *Ky.* 435, 209 *S. W.* 505], the husband accepted his wife's two children by a former marriage as part of the household at the time of the marriage. Thereafter he developed an aversion to the children and advised his wife that he would only continue to live with her if she got rid of the children. She left him, took the children and instituted an action for support. An award of support was affirmed on the ground that the wife was justified in leaving by reason of her husband's cruelty and constructive desertion. The Court of Appeals of Kentucky said:

"It would be hard to conceive of treatment that would be more cruel and inhuman by a husband toward a wife than the offer to live with her and give her a home only upon condition that she would get rid of her infant children by a former marriage, whom he knew were entirely dependent upon her when he married her, and agreed she might bring with her to his home."

In answer to the contention that, since the husband was under no legal obligation to support his stepchildren, his refusal to provide a home for them was justified, the court said:

"* * * we do not deem it necessary, for the purposes of this case, to consider this question, because it is not involved here. Assuming that he was not liable for their support, we are nevertheless convinced their mother was justified in leaving her husband upon the ground of cruel and inhuman treatment, when he made it a condition to a continuation of their marital relations that she must put her children out of his home."

In *Rigsby v. Rigsby, supra* [82 *Ark.* 278, 101 *S. W.* 728], the court held a wife entitled to support where she left

her husband's home after he assaulted her son of a prior marriage. The wife also had a 16-year-old daughter by such prior marriage. The husband had refused to allow this daughter to return to their household after she had left on a temporary visit to her married sister. In holding the husband guilty of abandonment by reason of conduct warranting the wife's departure, the Supreme Court of Arkansas said, with respect to the 16-year-old girl:

"* * * her sex and tender age required that she be under the control and care of her mother. The conduct of the [husband] in refusing to allow her to return was, so far as the evidence shows, utterly unreasonable. As the mother was entitled to the society and services of her young daughter, as she owed a duty to see that she was properly reared and protected during the period of her girlhood, this conduct of the [husband] would have gone far towards justifying the [wife] in, leaving his home in order to be with her children, had she chosen to do so."

In *Friend v. Friend, supra* [53 *Mich.* 543, 19 *N. W.* 178], a wife was granted a decree of divorce and alimony against her husband by reason of his cruelty. A ten-year-old daughter of the wife came to live with them upon their marriage. After their marriage the husband ordered the child out and had on at least two occasions locked both the wife and child out of the house. On the last occasion he put them both out forcibly, directed the child never to return and ordered his wife back into the house. She refused to return. He afterwards offered to take back his wife but only on condition of separating from her daughter. The Supreme Court of Michigan said:

"It is difficult to imagine any worse cruelty to a mother than such conduct, if not explained or excused. The only explanation that is given is that by law a husband is not bound to support his step children. * * * But we do not think [such a rule] has any place in this controversy. * * * Defendant * * * must have known that none but an unnatural mother would desert her young daughter to become his wife, and that if she had any suspicions that he desired such a result she never would have married him. * * * The child was * * * made a member of the family, and it was only during the latter days of discord that her condition was questioned. It was one of the expedients to

·break the mother's rebellious spirit   \*   \*   \*   we think that defendant has been guilty of very great cruelty, and that his willingness   \*   \*   \*   to get his wife back, and leave her daughter out of doors, is no indication to the contrary."

In *Rosenbaum v. Rosenbaum, supra* [206 *Ark.* 865, 177 *S. W. 2d* 927], an award of support to the wife was affirmed, where the wife departed from the marital household when her husband insisted she give up her six-year-old daughter and turn her over to relatives to rear. The Supreme Court of Arkansas said:

"Appellant ·[the husband] married appellee [the wife] knowing that she had this daughter and with a full realization that appellee owed her child the love and care that only a mother can give. \*   \*   \*   Appellant, therefore, had no right to insist that his wife give up her daughter \*   \*   \*   A majority of the court is of the opinion that the Chancellor's finding, that the separation was brought about by such wrongful conduct of appellant as justified appellee in leaving his home, \*   \*   \*   is not against the preponderance of the · testimony."

Whatever its precedential value at common law or in a separate maintenance action in the Superior Court, I seriously question whether the *Schneider* case should be followed in the juvenile and domestic relations court, in view of the legislative policy of entrusting to this court the task "not so much to dispose of controversies *inter partes*, as to serve society's interest in the parties' welfare— in this case, to preserve the family \*   \*   \*." *Mattox v. Mattox*, 43 *N. J. Super.* 111 (*App. Div.* 1956); *Cahen v. Cahen*, 47 *N. J. Super.* 141 (*App. Div.* 1957).

The preservation of the family involves the welfare, not only of the spouses, but also of children who are part of the family unit, irrespective of whether the children are those of both or only one of the spouses. It also involves the maintenance of proper parent-child relationships. To compel a mother to cast out her child by a former union from the family unit in order not to be charged as her husband's deserter would be for this court to foster abandonment and neglect of children in these circumstances.

Such a result is patently at odds with this court's function of preserving the family as well as its related statutory duties in the fields of juvenile delinquency and the protection and welfare of children. See *e. g., N. J. S. A.* 9 :2–9, 9 :6–1, 2A :4–14, 2A :4–18.

We may concede for present purposes, without deciding the issue, that a man, who, at the time of his marriage, knowingly assumes the obligation of a stepchild's becoming a member of the marital household, may not be compelled, against his will, to support such child. But to go further and to say that his renunciation of the assumed duty of support of his stepchild suffices to make his wife a deserter because she behaves as a natural mother and refuses to abandon her child to others, would appear to be an unusual position for this court to take in view of the foregoing legislative policy.

However, there is no necessity at this time to determine whether the *Schneider* case should now be followed. Assuming that it is good law in this court, the undisputed fact is that plaintiff is receiving from Kathleen's father, under an order of this court, $14 per week for Kathleen's support. This amount is adequate for the child's support and defendant is not being called upon to supplement it. Thus, he is in no way being required by this court or requested by plaintiff to support his stepchild. Plaintiff is merely insisting that defendant continue to allow the child to be a member of the household as contemplated when they were married. Since there is no requirement or demand that he support the child, the *Schneider* case is inapplicable.

The argument which resulted in defendant's sleeping in a separate room was caused in large measure by defendant's demand that Kathleen leave the household. Defendant has not, except by letters from his attorney, made a real effort to return to his wife's bed. She cannot, therefore, presently be charged as a deserter for failure to have intercourse with him.

There is no justification, however, for plaintiff's refusal to cook and serve meals to the defendant, provided he gives

her sufficient money for this purpose (which he has not been doing).

I find, therefore, that defendant is under a duty to support plaintiff and the two children of their marriage, Harold, Jr., and Robert. I find further, that the amount of defendant's present support is inadequate, since it does not supply plaintiff and such two children sufficient for the basic necessities of life. Defendant has, therefore, deserted his wife and two children by his willful failure to provide adequate food and other basic necessities, within the meaning of *N. J. S.* 2*A*:4–18, *subd. e.* *Mattox v. Mattox, supra; Cahen v. Cahen, supra.*

Defendant has been paying the rent ($21 per week), the gas and electric ($2 per week), and has been giving plaintiff $20 per week. Defendant's parents have served plaintiff with a notice of eviction from her apartment. To assure shelter for the plaintiff and the two children, therefore, defendant should be required to put plaintiff in funds for the rental of, and utilities for, an apartment in the event the eviction takes place. Admittedly, Kathleen benefits from these rent and utility payments and defendant is entitled to appropriate credit against any support requirement to the extent of any such benefits.

Defendant earns a take-home pay of $107 per week. Plaintiff and Robert are under a doctor's care and require medication. I find that plaintiff's basic necessities for herself and defendant's two children amount to $57 per week for all expenses but rent, gas and electric, and defendant's meals at home. This amount includes the therapy and drugs presently required for Robert, the cerebral palsy child, and a credit against the food and laundry requirements testified to of $8.50 per week representing Kathleen's share thereof. Defendant pays his mother $15 per week for his meals; his other expenses, including his car, clothing, gas, cigarettes, furniture and washing machine bills, union dues and insurance total $29.50 per week, exclusive of the $23 per week he pays for rent and gas and electric. Kathleen's share of the rent ($85 per month or $19.65 per week)

and gas and electric ($2 per week) is $4.50 per week, so that defendant's weekly share of these expenses is $18.50. I find that, considering defendant's income and earning capacity, and his own expenses, in order for plaintiff and the two children to be adequately supported and protected, in addition to the items hereinafter set forth, defendant should pay plaintiff $48 per week, plus $18.50 per week for rent and utilities, or a total of $66.50 per week; from this amount plaintiff shall pay all of the expenses in connection with the running of the household, including but not limited to rent, food, clothing for herself and the two children, all utilities (including telephone), ordinary medical and drug expenses, therapy for the youngest child Robert, laundry, dry cleaning, household items and newspapers. Defendant shall make this weekly payment to the Bergen County Probation Office. If defendant desires plaintiff to cook for him he shall pay to the Bergen County Probation Office an additional $10 per week for this purpose, in which event plaintiff shall cook for and serve meals to him. In addition, defendant shall continue to pay directly to the persons involved for the insurance on his wife and two children, and the existing furniture and washing machine bills. Defendant shall also pay any unusual medical and drug expenses, any reasonable dental bills, and any future increase above the $1.50 per week now required for Robert's therapy, provided plaintiff first consults him with respect to these items and if there is any dispute which cannot be adjusted, the matter be referred to the court for decision.

An order in accordance with the foregoing is being entered, effective December 2, 1957.