## White v. Cornish

C.P. of Monroe County, No. 8231 CIVIL 2012

*Thomas J. Foley, Jr.*, for plaintiffs.
*Steven D. Costello, Matthew P. Keris* and *Kyle N. Thompson*, for defendants.

WILLIAMSON, *J.*, May 13, 2014—This matter comes before the court on the summary judgment motion of defendant Darell T. Covington, M.D. ("defendant"). The matter involves alleged medical malpractice claims

of the plaintiffs against the defendants Dr. Covington and Richard M. Cornish, M.D., that caused the death of Richard C. White ("decedent"). Defendant Covington contends plaintiffs cannot prove he owed a duty of care to the decedent as of October 3, 2010 as there was no doctor-patient relationship. The defendant also contends that plaintiffs are unable to produce expert testimony sufficient to prove a prima facie case of medical negligence. As such, defendant Covington moves for judgment in his favor and dismissal from this suit.

Summary judgment may be granted pursuant to Pennsylvania Rule of Civil Procedure 1035.2 where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 468-69 (Pa. 1979). Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035(b); *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 85 (Pa. Super. 1995).

Summary judgment may be granted only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 562 A.2d 279, 280 (Pa. 1989). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Davis v. Pennzoil Co.*, 264 A.2d 597 (Pa. 1970). Moreover, the burden is on the moving party to prove that no genuine issue of material fact exists. *Long v. Yingling*, 700 A.2d 508, 512 (Pa. Super. 1997). All doubts as to the existence of a genuine issue of material fact must

be resolved against the moving party. *Thompson*, 412 A.2d at 469.

In response, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner*, 303 A.2d 826 (Pa. 1973). The court may also accept as true all well-pled facts contained in the non-moving party's pleadings. *Mattia v. Employment Mut. Cos.*, 440 A.2d 616 (Pa. Super. 1982); *Ritmanich v. Jonnel Enters, Inc.*, 280 A.2d 570 (Pa. Super. 1971). A general denial is unacceptable and deemed an admission where it is clear that the non-moving party has adequate knowledge and that the means of information are within the control of the non-moving party. *Elia v. Olszewski*, 84 A.2d 1889(Pa. 1951).

In order to prove medical negligence, a plaintiff must be able to establish the following:

1) The defendant owed a duty to the plaintiff;

2) The defendant breached that duty;

3) The defendant's breach of duty was a proximate cause of, or a substantial factor in, bringing about plaintiff's harm; and

4) The plaintiff suffered damages due to the harm.

*Winschel v. Jain*, 925 A.2d 782,788 (Pa. Super. 2007).

At issue in this case is whether or not the decedent had a doctor/patient relationship with the defendant, such that the defendant owed a duty to the decedent. The uncontradicted facts set forth in the motion for summary judgment and from the depositions are as follows:

Dr. Covington is a colo-rectal surgeon. Dr. Cornish is an emergency department physician. Dr. Covington began treating the decedent in 2003 for rectal carcinoma. Dr. Covington performed surgery on the decedent in 2003, at which time cancerous tissue was removed and a permanent colostomy was necessary. Dr. Covington continued to treat the decedent until July 22, 2009 when Dr. Covington terminated the doctor-patient relationship due to decedent's failure to pay his outstanding medical bill. The amount of the bill was $44.00. Dr. Covington sent notice of this termination of the doctor-patient relationship by letter dated July 22, 2009, advising the decedent that if the bill remained unpaid for thirty (30) more days, he could no longer provide services to the decedent as his doctor. The letter also advised Dr. Covington would reconsider seeing the decedent as a patient if the bill was paid in full. The decedent never paid the outstanding bill.

On September 22, 2010, the decedent presented to the Pocono Medical Center (PMC) Emergency Room (ER) with complaints of abdominal pain. A CT scan of the abdomen was ordered. The diagnosis at that time was abdominal pain, enteritis and strained abdominal wall. The decedent was given an antibiotic and discharged.

Following the September 22, 2010 ER visit, the decedent obtained a surgical consultation with Dr. Nicolas Teleo concerning the abdominal pain. On October 3, 2010, the decedent again presented to the PMC emergency room with abdominal pain. Defendant, Dr. Cornish, who was an emergency room physician on duty at that time, ordered another CT scan. The radiologist at PMC who read the CT scan recommended Dr. Cornish obtain a surgical consultation. Rather than obtain a surgical consultation

with Dr. Teleo, or with an on-call surgeon at PMC, Dr. Cornish called Dr. Covington at the request of the decedent.

Dr. Cornish made contact with Dr. Covington by telephone. This is not in dispute. The contents of that telephone conversation between Dr. Cornish and Dr. Covington are in dispute. It is undisputed that Dr. Covington was not asked to physically evaluate the decedent, that he did not personally review the CT scan or lab results himself, and that he did not speak directly to the decedent. Dr. Covington later signed a copy of the ER chart, but did not review it during the call from Dr. Cornish, Dr. Covington was neither on-call for PMC, nor formally requested to see the decedent on October 3, 2010. Dr. Cornish made the decision to discharge the decedent from the ER.

We find that based on the facts established in discovery, that there is no material issue with regard to Dr. Covington not owing a duty to the decedent. For that reason, the plaintiffs are unable to establish the first element in proving medical negligence; namely, that the defendant owed a duty to the plaintiff/decedent. The plaintiffs have not shown that there was a doctor-patient relationship between the decedent and Dr. Covington on October 3, 2010. Dr. Covington terminated his doctor-patient relationship with the decedent on July 22, 2009, by notice sent to the decedent. The decedent never re-established a doctor-patient relationship. It is immaterial that the relationship ended due to non-payment of a bill for $44.00. The undisputed fact was that the relationship was terminated by Dr. Covington. He cannot be forced to maintain a doctor-patient relationship under the circumstances of this case.

The decedent also established a new doctor-patient relationship with a surgeon (Dr. Teleo) concerning his abdominal condition, within the week prior to the October 3, 2010 admission to the PMC emergency room. Although the decedent requested Dr. Cornish call Dr. Covington, rather than the surgeon he recently had seen, or another surgeon or specialist present and on-call at PMC, we do not find this re-establishes a doctor-patient relationship. The contents of what took place during that call are disputed as between Dr. Cornish and Dr. Covington. However, we cannot say that a 3 minute and 14 second telephone call, without a physical consultation of the decedent, or review of the records, lab results and CT scans, or an affirmative acknowledgement of a doctor-patient relationship while providing treatment directly to the decedent can establish a doctor-patient relationship. Therefore, no duty was owed by Dr. Covington to the decedent.

We further note that even accepting as true the contents of the telephone conversation and what was said therein to Dr. Cornish by Dr. Covington, as related by Dr. Cornish, that information was given to Dr. Cornish, not the decedent, and Dr. Cornish elected to discharge the decedent. Dr. Covington could not have expected that he was re-establishing a doctor-patient relationship with the decedent by having the courtesy to take a telephone call from Dr. Cornish, who was the ER and treating doctor at the time. Under these facts, we find no duty of Dr. Covington to the decedent as there was no proof of a doctor-patient relationship on October 3, 2010. Therefore, defendant Dr. Covington's motion for summary judgment will be granted.

Defendant, Dr. Covington, also raises grounds for

summary judgment due to plaintiffs' failure to produce expert reports sufficient to show he breached the standard of care or was a direct or factual cause of plaintiff's harm. We have already granted defendant's motion for summary judgment on other grounds, which would make this argument moot. However, we will address the argument since it has been raised by the defendant.

Defendant Dr. Covington alleges the expert reports provided by the plaintiffs in discovery, to which those experts are expected to testify to at trial, are in conflict with one another. The defendant contends the conflict is to such an extent, that the opinions are inconsistent and unable to be presented to a jury. The defendant cites to *Mudano v. Philadelphia Rapid Transit Co.*, 289 Pa. 51, 137 A.2d 104 (1927), wherein the Pennsylvania Supreme Court, held that a plaintiff's medical expert's testimony must be reasonably consistent so as not to confuse a jury. The court went on to state that where the "testimony was so conflicting regarding the proper inference to be drawn as to render either one of two inconsistent inferences possible of adoption, the adoption of the one or the other would be more than a guess, and under such circumstances, plaintiff fails to sustain the burden of proof which the law casts upon him." *Id.* at 137 A. 106.

This ruling was later applied in *Brodowski v. Ryave*, 885 A.2d 1045 (Pa. Super. 2005), where one expert stated a consulting cardiologist should have admitted the patient or obtained a neurology consult. Another expert for the plaintiff stated that having the plaintiff seen by a neurologist was "a good idea," but it was the admitting physician's duty to obtain the neurology consultation and not the consulting cardiologist. *Id.* The Superior Court

held the jury would have had the impossible task of determining the standard of care to apply from plaintiffs' experts, and left only to guess at it. *Id.*

Here, plaintiffs' expert, Dr. Silverman, finds a formal consult occurred when Dr. Cornish called Dr. Covington. Dr. Silverman went on to opine that Dr. Covington's refusal to see the decedent in the ER on October 3, 2010 was a deviation from the standard of care. The plaintiffs' other expert, Dr. Weihl, found fault with Dr. Cornish. He relied on Dr. Cornish's version of the October 3, 2010 telephone call with Dr. Covington from a note Dr. Cornish recorded October 5, after the decedent's discharge, that he consulted Dr. Covington by telephone and it led to the opinion of Dr. Covington that no "surgical admission" was necessary. Dr. Weihl then stated that Dr. Cornish relied only upon a telephone consultation with a surgeon before deciding to discharge decedent, and this was a breach of a standard of care.

Plaintiffs' other expert, Dr. Mehlman, asserts that regardless of what was stated in the disputed telephone conversation between Dr. Cornish and Dr. Covington, the right things did not happen and Dr. Cornish did not meet the standard of care on October 3, 2010. Dr. Mehlman further states: "[E]mergency medicine doctors do not send seriously ill patients requesting help home whatever anyone else tell (sic) them. That is the standard of care." As Dr. Mehlman noted, Dr. Cornish acknowledged in his deposition that "it was my judgment that he didn't require admission." Furthermore, Dr. Mehlman stated "[r]egardless of what Dr. Covington might have thought, might have said in the roughly 3 minute and 14 second conversation, ultimately, Dr. Cornish should have never

have discharged patient RW (decedent) from what he knew, and should have understood..."

Dr. Mehlman does go on to state that Dr. Cornish and Dr. Covington had a duty to admit the patient and that Dr. Covington failed to meet a standard of care by not coming to examine the decedent, and interpreting tests. However, these findings are premised by Dr. Mehlman on if Dr. Covington was the appropriate surgeon to have been consulted and what took place in that consultation. Clearly, if not, then Dr. Mehlman does not have this opinion regarding Dr. Covington. As no doctor-patient relationship existed, Dr. Covington could not be the appropriate surgeon Dr. Mehlman refers to in his report. The appropriate surgeon would have to have a doctor-patient relationship, which Dr. Covington did not have.

Even after this analysis, Dr. Mehlman goes on to state that Dr. Cornish's discharge assured the decedent's death. He asserts that regardless of what Dr. Covington said or did not say, the standard of care required Dr. Cornish to admit decedent for multiple consultations. This in itself could be confusing to a jury.

We find these reports are not reasonably consistent. As a result, a jury would be confused as to who had a standard of care to admit the decedent. Plaintiffs argue two separate standards of care, and a possible medical and surgical admission. However, the reports conflict with one another to the extent that a jury would be confused as to whether or not plaintiffs' experts find Dr. Covington had a duty of care, whether or not he breached a standard of care, and whether or not such breach was a direct cause of the injury. As such, the reports cannot be used to be critical of

Dr. Covington. Therefore, there is no material fact at issue and the motion for summary judgment can be granted on those grounds as well.

We recognize that the issues raised herein, specifically what constitutes termination and/or re-establishment of a doctor-patient relationship, appear to be matters that involve a controlling question of law to which there is substantial grounds for difference of opinion. We further note that our research indicates no appellate case directly on point in the Commonwealth of Pennsylvania that adequately addresses these issues. An immediate appeal, specifically requested by the plaintiffs in their motion to vacate and for reconsideration, may materially advance the ultimate termination of this matter. The facts of this case are so intertwined as between the defendants Dr. Cornish and Dr. Covington, that both would likely testify at trial, regardless of whether or not one party was released from the case. Furthermore, if Dr. Covington were to ultimately remain a party to this litigation, it would be more beneficial to all parties to try the case together with both defendants. Therefore, we will grant certification for an interlocutory appeal that will be at the discretion of the Superior Court.

## ORDER

And now, this 21st day of May, 2014, the motion for summary judgment of Darell T. Covington, M.D. is granted. Defendant, Darell T. Covington, M.D., is dismissed as a party to this action and the prothonotary is hereby directed to enter judgment in favor of defendant Covington and against the plaintiffs.

Furthermore, this court is of the opinion that the court's order and opinion of this date involves a controlling

question of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the matter. This court order is so certified pursuant to 42 Pa. C.S.A. §702 (b) and it is further ordered that all further proceedings are stayed pending a decision by the Superior Court.